MR. JUSTICE SHEEHY
delivered the opinion of the Court.
This matter comes before the Montana Supreme Court from the District Court, Sixteenth Judicial District, Rosebud County, under the automatic review provisions of sections 95-2206.12 *306 through 95-2206.15, R.C.M.1947, now sections 46-18-307 through 46-18-310 MCA. In felony convictions not involving the imposition of the death penalty, it is the function of this Court to review the record and determine if any errors have been committed resulting in the imposition of an illegal sentence, while it is the function of the Sentence Review Division to determine if a legal sentence is appropriate in the circumstances. State v. McKenzie (1978), 177 Mont. 280, 581 P.2d 1205, 1229; State v. Simtob (1969), 154 Mont. 286, 462 P.2d 873, 874; sections 46-18-901 to 905 MCA. However, when the death penalty has been imposed, the Legislature has directed this Court, because of the nature of the penalty involved, to undertake expeditiously both functions. Sections 46-18-307, -308 MCA; Minutes of State Senate Judiciary Committee, January 28, 1977. We recognize that in McKenzie the Sentence Review Division was allowed to conduct a review of the death penalty imposed, however, the defendant in McKenzie was sentenced under statutes different from those involved in this appeal. 581 P.2d at 1227. Because the review conducted by this Court statutorily stands in place of any recourse to the Sentence Review Division, the completion of this review will mark the end of state action upon this cause, excepting any action upon a petition for rehearing.
Defendant, Dewey Eugene Coleman has been sentenced to death for the crime of aggravated kidnapping under a judgment and order entered by the District Court, July 10, 1978.
The facts on which Dewey Eugene Coleman was found guilty by a jury on November 14, 1976, are set out in his earlier appeal to this Court, which we decided April 26, 1978. State v. Coleman (1978), 177 Mont. 1, 579 P.2d 732. We need not repeat those incidents here.
Defendant had been convicted of the crimes of deliberate homicide, aggravated kidnapping, and sexual intercourse without consent, violations of sections 94-5-102, 94-5-303, and 94-5-503, R.C.M.1947, now sections 45-5-102, 45-5-303, 45-5-503 MCA. By our decision in the Coleman appeal, we remanded the case to the *307 District Court for resentencing on count II, aggravated kidnapping, and count III, sexual intercourse without consent. The judgment of conviction on count I, deliberate homicide and the sentence thereupon imposed, were affirmed.
The District Court on remand set a sentencing hearing “in accordance with section 95-2206.06 through 95-2206.11, R.C.M., as amended” for June 14, 1978. At that hearing, the court denied a motion of defendant to quash and ordered the presentence report be filed. Neither party presented any witnesses or other evidence.
Thereafter the court set July 10, 1978 as the date for sentencing, on that date, the District Court handed counsel for defendant and the State, a copy of its written findings, judgment and order. After argument was presented, the District Court then signed and filed its findings, judgment and order.
The District Court found and concluded that the aggravating circumstances set forth in section 95-2206.8(7), R.C.M. 1947, existed because the offense of aggravated kidnapping had been committed by defendant and it had resulted in the death of the victim, Miss Peggy Harstad; that none of the mitigating circumstances listed in section 95-2206.9, were sufficiently substantial to call for leniency in this case; and that the only mitigating circumstance technically present was that the defendant had no record history of prior criminal activity.
By reason of his findings and conclusions, the District Court ordered that the defendant Dewey Eugene Coleman be hanged between the hours of 6:00 a.m. and 6:00 p.m. on the 31st day following the completion of the automatic review of his case by this Court, said execution to be supervised by the sheriff of Yellowstone County. The District Court further ordered that defendant be sentenced to a term of 20 years for the crime of sexual intercourse without consent, and that such sentence be served consecutively to his sentence of 100 years for deliberate homicide, which had previously been assessed against the defendant and which was not disturbed on his appeal.
As a result of his trial in November 1975, defendant was then *308 sentenced by the District Court to 100 years on count I, deliberate homicide; to death by hanging on count II, aggravated kidnapping; and to 40 years on count III, sexual intercourse without consent inflicting bodily injury. One of the questions decided by this Court on the first Coleman appeal was that his sentence of death by hanging was invalid under the statutes then in effect.
At the time of defendant’s trial, the death penalty statute in Montana for aggravated kidnapping was section 94-5-304, R. C.M. 1947. It read:
“A court shall impose the sentence of death following conviction of aggravated kidnapping if it finds the victim is dead as the result of the criminal conduct.”
Defendant was sentenced to death under this statute.
Section 94-5-304 which had been enacted in 1973 (Ch. 513, Laws of Montana (1973)) and amended in 1974 (Ch. 126, Laws of Montana (1974)) was repealed by the 1977 session of the State Legislature (Ch. 338, Laws of Montana (1977)). In the same enactment new death penalty statutes were codified in sections 94-2206.6 through 95-2206.15, R.C.M.1947, now sections 46-18-301 through 46-18-310 MCA.
In the first Coleman appeal, we held that because former section 94-5-304 mandatorily imposed the death penalty, it was constitutionally impermissible under Untied States Supreme Court decisions in Woodson v. North Carolina (1976), 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944; Coker v. Georgia (1977), 433 U.S. 584, 97 S. Ct. 2861, 53 L.Ed.2d 982; and Roberts v. Louisiana (1977), 431 U.S. 633, 97 S.Ct. 1993, 52 L.Ed.2d 637. This Court thereupon held that the death penalty assessed against defendant on November 21, 1975, must be set aside and, for reasons not important here, that the 40 year sentence on the count of sexual intercourse without consent must also be set aside. We remanded the case to District Court for resentencing on the counts of aggravated kidnapping and sexual intercourse without consent, without instructions to the District Court as to which law was applicable with respect to the resentencing of the defendant.
*309 When the cause was received by the District Court on remand, the District Court determined that it would apply the new sentencing statutes that included the death penalty. The District Court then used the 1977 statute to assess the death penalty against defendant.
Defendant raises 19 specifications of error in this appeal. We will discuss these alleged errors within the broader context of the issue to which they relate. We frame the issues presented in this review in the following manner:
1. Did defendant’s conviction on the count of deliberate homicide and the count of aggravated kidnapping constitute double jeopardy?
2. Were the present Montana capital punishment provisions, sections 95-2206.6 through 95-2206.15, R.C.M.1947, now sections 46-18-301 through 46-18-310 MCA applicable in resentencing defendant?
3. Do Montana’s capital punishment provisions violate constitutional standards?
4. Was defendant denied a fair opportunity to present argument and evidence with respect to sentencing?
5. Is defendant’s sentence of death disproportionate to his crime with respect to sentences imposed in similar cases, or was it the product of passion, prejudice or other arbitrary factors?
6. If the capital punishment provisions are valid and applicable, must this Court, in its review of the sentence, reconsider issues raised and disposed of in defendant’s first appeal?
We first address the issue raised by defendant that his conviction of aggravated kidnapping, in light of his conviction of deliberate homicide based upon the felony of kidnapping, has placed him twice in jeopardy. Defendant contends the aggravated kidnapping conviction is barred by the Fifth Amendment to the United States Constitution and the 1972 Montana Constitution, Art. II, § 25. Defendant also argues this conviction is barred statutorily by section 95-1711, R.C.M.1947, now section 46-11-501, -502 MCA.
*310 The Fifth Amendment to the Federal Constitution states no person shall “be subject for the same offense to be twice put in jeopardy . . .” The 1972 Montana Constitution Art. II, § 25, states “No person shall be again put in jeopardy for the same offense.” Defendant has been subjected to but one trial, however, these double jeopardy provisions also protect offenders from multiple punishment for the same offense. Ex Parte Lange (1873), 85 U.S. (18 Wall.) 163, 173, 21 L.Ed. 872; Matter of Ratzlaff (1977), 172 Mont. 439, 564 P.2d 1312, 1316.
Defendant has contended his conviction on the count of deliberate homicide is upon the same set of facts as his conviction on the count of aggravated kidnapping, thus he has been exposed to double jeopardy. We determine the prohibition against double jeopardy has not been violated in this case.
Count I of the information charging defendant reads as follows:
“Count I: That the defendant purposely and knowingly caused the death of another human being, to-wit: Peggy Lee Harstad, while engaged in the commission of the following felonies:
“Kidnapping and Sexual Intercourse Without Consent, involving the use of physical force and violence against the said Peggy Lee Harstad.”
Count II of the information reads as follows:
“Count II: That the defendant knowingly and purposely and without lawful authority restrained another person, to-wit: Peggy Lee Harstad, by holding her in a place of isolation and by using physical force to facilitate the Commission of a felony, to-wit: Sexual Intercourse Without Consent and for the purpose of inflicting bodily injury on and terrorizing the said victim, Peggy Lee Harstad, resulting in the death of Peggy Lee Harstad.”
The established test for determining whether two offenses are sufficiently distinguishable to permit the imposition of cumulative punishment was stated in Blockburger v. United States (1932), 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306:
“The applicable rule is that, where the same act or transaction *311 constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not...” (Emphasis added.)
As the United States Supreme Court noted in Brown v. Ohio (1977) , 432 U.S. 161, 166, 97 S.Ct. 2221, 53 L.Ed.2d 187, this test emphasizes the elements of the two crimes. Rejecting a defendant’s claim of double jeopardy, this Court stated in State v. Davis (1978) ,), 176 Mont. 196, 577 P.2d 375, “ ‘A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other.’ ” 577 P.2d at 377. (Quoting from Morey v. Commonwealth (1871), 108 Mass. 433.) Thus, our inquiry in the present appeal is directed to the elements of proof necessary to establish each count of the information.
To establish count I of the information the prosecution had to prove the defendant (1) purposely and knowingly (2) caused the death of another human being (3) while commiting the felonies of kidnapping and (4) sexual intercourse without consent. To establish count II of the information the prosecution had to prove the defendant (1) knowingly and purposely (2) without lawful authority (3) restrained another person by holding her in a place of isolation and by using physical force (4) to facilitate the commission of sexual intercourse without consent and (5) for the purpose of inflicting bodily injury on and terrorizing the victim. Both counts required proof of a “purposely and knowingly” mental state, proof of kidnapping and proof of sexual intercourse without consent. However, count I, in addition, required proof of the death of the victim which count II did not; and count II required proof of a purpose to inflict bodily injury and terrorize the victim which count I did not. The offenses of deliberate homicide (former section 94-5-102, R.C.M.1947, now section 45-5-102 MCA) and aggravated kidnapping (former section 94-5-302, R.C.M.1947, now section 45-5-302 MCA) are separate and distinct offenses in our codes and each re *312 quires proof of elements that other does not. Therefore, defendant may be convicted and sentenced for both count I and count II of the information without violating the double jeopardy prohibition even though the counts arose from the same conduct or episode. Brown, 432 U.S. at 166, 97 S.Ct. 2221; United States v. Eagle (8th Cir. 1978), 586 F.2d 1193, 1196 (defendant’s conviction of assault with a deadly weapon and assault resulting in serious bodily injury each arising from same shooting incident affirmed); Kowalski v. Parratt (8th Cir. 1976), 533 F.2d 1071, 1073-74 cert. den. 429 U.S. 844, 97 S.Ct. 125, 50 L.Ed.2d 115 (conviction of robbery and using a firearm in commission of same robbery affirmed); Smith v. Gaffney (10th Cir. 1972), 462 F.2d 663, 665-666 (conviction of burglary and larceny based upon same transaction affirmed); Davis, 577 P.2d at 377.
Arguments made by defendant in this appeal were also made by the defendant in Williams v. Oklahoma (1959), 358 U.S. 576, 79 S.Ct. 421, 3 L.Ed.2d 516. There the defendant had kidnapped and murdered his victim. He pled guilty to the murder charge and received a life sentence. Defendant was then charged with kidnapping, pled guilty and received the death penalty after the sentencing court considered the homicide as an aggravating circumstance. Defendant challenged the death sentence on the grounds it was disproportionate to the life sentence given him for the homicide and on the grounds it constituted a second punishment for the same crime. The United States Supreme Court rejected defendant’s claims stating Oklahoma law clearly made kidnapping and homicide separate and distinct offenses; therefore there was no merit in the argument that the “lesser crime” of kidnapping “merged” into the “greater crime” of murder so as to bar any sentence, or at least a greater sentence than was imposed for the homicide. 358 U.S. at 587, 79 S.Ct. 421. The Court also stated:
“[T]he Due Process Clause of the Fourteenth Amendment does not, nor does anything in the Constitution, require a State to fix or impose any particular penalty for any crime it may define or to impose the same or ‘proportionate’ sentences for separate and in *313 dependent crimes. Therefore we cannot say that the sentence to death for the kidnapping, which was within the range of punishments authorized for that crime by the law of the State, denied to petitioner due process of law or any other constitutional right.” 358 U.S. at 586, 79 S.Ct. at 427. (Emphasis added.)
We conclude defendant’s conviction of both count I, deliberate homicide, and count II, aggravated kidnapping, did not transgress any constitutional inhibitions, federal or state, against double jeopardy.
Defendant has also argued his aggravated kidnapping conviction is barred by the operation of section 95-1711(2), R.C.M.1947, now section 46-11-502 MCA. Defendant argues the aggravated kidnapping count is an “included offense” in the count of deliberate homicide and he therefore may not be, under section 95-171 l(2)(a), now section 46-11-502(1) MCA, convicted of that count. Section 95-171 l(l)(b), R.C.M.1947, now section 46-11 -50l(2)(a) MCA, defines “included offense” in pertinent part as an offense “established by proof of the same or less than all the facts required to establish the commission of the offense charged.” An accused may not be convicted of more than one offense if one offense is included in the other. Section 95-171 l(2)(a), R.C.M.1947, now section 46-11-502(1) MCA. However, as the discussion above makes clear, to establish deliberate homicide and to establish aggravated kidnapping require proof of distinct and separate elements. In such a case the statutory provisions recited do not bar the conviction for aggravated kidnapping, State v. Perry (1979), 180 Mont. 364, 590 P.2d 1129, 1131, and defendant’s double jeopardy claim fails on this point as well.
The next issue with which we are confronted is whether ex post facto provisions in the federal and state constitutions or the statutorily codified rule of construction against retroactivity (section 12-201, R.C.M.1947, now section 1-2-109 MCA) prevent application of the sentencing statutes enacted in 1977 to this defendant. As was indicated in the recitation of facts, defendant committed the crime with which he was charged in 1974, however, *314 upon resentencing after our remand, the District Court applied the statutes enacted in 1977. Defendant argues this violates the constitutional prohibition against ex post facto laws as well as the statutory provision against retroactivity. Defendant further argues he is entitled to be sentenced under the law in effect at the time the crime was committed. Because this Court has declared the provision mandating the death penalty which was effective at that time to be unconstitutional, defendant contends the maximum sentence he may receive is 100 years in prison.
In considering this issue, it must be initially determined what would cause the application of the 1977 statutes to an act committed in 1974 to run afoul of the ex post facto prohibition and the statutory rule of construction against retroactivity. Therefore what makes a statute ex post facto or “retroactive” becomes the keystone consideration. Simply because a statute operates on events antecedent to its effective date does not make the statute ex post facto, Calder v. Bull (1798), 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 nor does such operation make a law prohibitively retroactive. Cox v. Hart (1922), 260 U.S. 427, 435, 43 S.Ct. 154, 67 L.Ed. 332. Thus the effect the statute will have must determine its validity with respect to ex post facto or retroactive inhibitions.
The constitutional prohibition against ex post facto laws has its roots in the desire on the part of the framers of the United States Constitution to prevent the sovereign authority from making acts criminal which were innocent when committed as had been done by the British crown. Calder, 3 U.S. at 388-389. The Court in Calder noted the advocates of such laws were stimulated by ambition, or personal resentment and vindictive malice and “to prevent such, and similar acts of violence and injustice . . . the federal and state legislatures were prohibited from passing any ... ex post facto law.” Calder. The constitutional inhibition of ex post facto laws was thus intended “to secure substantial personal rights against arbitrary and oppressive legislative action.” Malloy v. South Carolina (1915), 237 U.S. 180, 183, 35 S.Ct. 507, 59 L.Ed. 905; Beazell v. Ohio (1925), 269 U.S. 167, 46 S.Ct. 68, 70 L.Ed. 216.
*315 Summarizing more than a century of definitions Justice Stone writing for a unanimous court in Beazell stated that:
“[A]ny statute which punishes as a crime an act previously committed, which was innocent when done, which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed, is prohibited as ex post facto. The constitutional prohibition and the judicial interpretation of it rest upon the notion that laws, whatever their form, which purport to make innocent acts criminal after the event, or to aggravate an offense, are harsh and oppressive, and that the criminal quality attributable to an act, either by the legal definition of the offense or by the nature or amount of punishment imposed for its commission, should not be altered by legislative enactment, after the fact, to the disadvantage of the accused.” 269 U.S. at 169-170, 46 S.Ct. at 68-69. (Emphasis added.)
Clearly the important question in determining whether a subsequent statute and its application transgress this inhibition is whether some substantial right of the accused is materially affected. However, the Supreme Court has iterated the proposition that changes in procedure not affecting materially the rights of a defendant do not come within the constitutional prohibition.
For example, the State of Utah altered its rule governing the qualifications of witnesses, allowing felons to testify, after the accused committed the act but before his trial. The Court in Hopt v. Territory of Utah (1884), 110 U.S. 574, 4 S.Ct. 202, 28 L.Ed. 262, dismissed the ex post facto claim based on this change even though the change had detrimental effect stating:
“. . . [Alterations which do not increase the punishment, nor change the ingredients of the offense or the ultimate facts necessary to establish guilt, but — leaving untouched the nature of the crime and the amount or degree of proof essential to conviction — only removes restrictions upon the competency of certain classes of persons as witnesses, relate to modes of procedures only, in which no *316 one can be said to have a vested right, and which the state, upon grounds of public policy, may regulate at pleasure.” 110 U.S. at 590, 4 S.Ct. at 210. (Emphasis added.)
Although the Court in Thompson v. State of Utah (1898), 170 U.S. 343, 18 S.Ct. 620, 42 L.Ed. 1061, found the change from requiring a panel of 12 jurors to requiring a panel of 8, to have substantially affected the accused’s rights and therefore be ex post facto, it stated no one had a vested right in mere modes of procedure. 170 U.S. at 352, 18 S.Ct. 620. Furthermore, “statutes regulating procedure, if they leave untouched all the substantial protections with which existing law surrounds the person accused of crime, are not within the constitutional inhibition of ex post facto laws.” 170 U.S. at 352, 18 S.Ct. at 623. In Dobbert v. Florida (1977), 432 U.S. 282, 92 S.Ct. 2290, 53 L.Ed.2d. 344, the Supreme Court held that the trial and sentencing of the accused under statutes not in effect at the time of his crime did not violate ex post facto prohibitions. The Court ruled the changes were merely procedural, were less onerous than the law that had been previously declared unconstitutional, and did not change the quantum of punishment attached to the crime. 432 U.S. at 292, 294, 92 S.Ct. 2290.
The inhibition upon ex post facto laws then, does not give an accused a right to be tried, in all respects, by the law in force when the crime charged was commited providing he has not been deprived of any substantial right or immunity he possessed at the time of the commission of the offense charged. Dobbert, 432 U.S. at 293-294, 92 S.Ct. 2290; Malloy, 237 U.S. at 183, 35 S.Ct. 507; Gibson v. Mississippi (1896), 162 U.S. 565, 590, 16 S.Ct. 904, 40 L.Ed. 1075. However, the Court has made clear a change which is labeled procedural will not except it from ex post facto prohibitions if it invades or modifies rights of a party charged with a crime. Kring v. Missouri (1883), 107 U.S. 221, 232, 2 S.Ct. 443, 27 L.Ed. 506. (The change in Kring made evidence that was conclusive of innocence not a factor at all, and in effect increased the punishment for the offense.) Just what changes in “procedure” will be held to be of sufficient moment:
*317 “. . . to transgress the constitutional prohibition cannot be embraced within a formula or stated in a general proposition. The distinction is one of degree. But the constitutional provision was intended to secure substantial personal rights against arbitrary and oppressive legislation . . . and not to limit the legislative control of remedies and modes of procedure which do not effect matters of substance.” (Citations omitted.) Beazell, 269 U.S. at 171, 46 S.Ct. at 69.
The Supreme Court has also stated a statute which, when viewed in the light of reason and common sense, mitigates the rigor of the law in force at the time a crime was committed cannot be regarded as ex post facto with reference to that crime. Rooney v. North Dakota (1905), 196 U.S. 319, 325, 25 S.Ct. 264, 49 L.Ed. 494; Calder, 3 U.S. at 390.
Section 12-201, R.C.M.1947, now section 1-2-109 MCA, states that no law is “retroactive” unless expressly so declared. However, this is but a rule of construction and what is “retroactive” so as to warrant application of the rule has been defined judicially by this and other courts. A statute is not “retroactive” merely because it draws upon antecedent facts for its operation. Cox v. Hart, 260 U.S. at 157, 43 S.Ct. 154. A statute is “retroactive” in a legal sense “which takes away or impairs vested rights acquired under existing laws or creates a new obligation, imposes a new duty or attaches a new disability in respect to transactions already past.” City of Harlem v. State Highway Commission (1967), 149 Mont. 281, 425 P.2d 718, 720; Dunham v. Southside National Bank (1976), 169 Mont. 466, 548 P.2d 1383, 1386; Butte & Superior Mining Co. v. McIntyre (1924), 71 Mont. 254, 229 P. 730; Sturges v. Carter (1885), 114 U.S. 511, 5 S.Ct. 1014, 29 L.Ed. 240.
In 1973, the legislature enacted section 94-5-303, R.C.M.1947, now section 45-5-303 MCA, and section 94-5-304, R.C.M.1947. Ch. 513, Laws of Montana (1973). The former section set forth the elements of the crime of aggravated kidnapping and stated “a person convicted of aggravated kidnapping shall be punished by death as provided in section 94-5-304 or [imprisoment] ...” (Emphasis *318 added.) Section 94-5-304, as it then read, imposed the death penalty if the victim dies as a result of the criminal conduct “unless there are mitigating circumstances.” The quoted language was deleted by the 1974 amendment to section 94-5-304, making the death penalty mandatory in those circumstances specified. Ch. 126, Laws of Montana (1974). Section 94-5-304 was repealed in 1977 by Ch. 338, Laws of Montana (1977) which enacted the current scheme for imposition of the death penalty; that is, providing for a separate sentencing hearing; consideration of mitigating or aggravating circumstances, written findings and conclusions, and expedited review of the sentence. It is important to note that the original enactment of section 94-5-303(2), now section 45-5-303(2) MCA, effective when the crime involved here was committed, was never altered by the amendments and has always provided the crime of aggravated kidnapping shall be punished by death or imprisonment. The amendments have related only to the procedure the court must follow in imposing the sentence.
The 1974 amendment, effective when the crime was committed, mandated a death penalty if the victim dies as a result of the criminal conduct. The 1977 amendments ameliorated this, allowing an exercise of judicial discretion within certain limits and requiring consideration of mitigating circumstances. Clearly, the latter amendments lessened the rigor of the 1974 amendment and are less onerous than the 1974 law. As such they, on their face, cannot be considered ex post facto. Calder v. Bull, 3 U.S. at 390; Rooney v. North Dakota, 196 U.S. at 325, 25 S.Ct. 264; Dobbert v. Florida, 432 U.S. at 292-294, 92 S.Ct. 2290. Because the accused has no vested right in modes of procedure not materially affecting his rights, and because the changes in the law on their face do not impose new obligations or duties or disabilities in respect to transactions already past, the changes are also not on their face retroactive. City of Harlem, 425 P.2d at 720; McIntyre, 229 P. at 733. In fact, had there been no declaration of unconstitutionality in the first Coleman decision, the District Court may well have been obligated to apply the 1977 statutes as their changes benefited the *319 accused. Marks v. United States (1977), 430 U.S. 188, 197, 97 S.Ct. 990, 51 L.Ed.2d 260.
Because this Court did declare the 1974 amendment mandating the death penalty unconstitutional, the ex post facto and “retroactive” arguments are raised by defendant. Thus, the crucial question becomes what is the effect of that declaration. It must be emphasized the decision in Coleman, declared unconstitutional only section 94-5-304 as amended in 1974. The preceding section 94-5-303, enumerating the elements of the crime and the potential punishment was not addressed by the decision and has remained viable since its enactment in 1973.
There exists a rule of statutory construction that a statute declared unconstitutional is considered void ab initio and has no effect. This proposition is best typified by the following statement of Justice Field in Norton v. Shelby (1886), 118 U.S. 425, 442, 6 S.Ct. 1121, 30 L.Ed. 178: “An unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed.” The aim of such a rule of construction is to hold the exercise of legislative power in excess of constitutional limits to be of no effect. Field, The Effect of an Unconstitutional Statute (1935), pp. 8-12. The author of the cited treatise, however, indicated the absoluteness of such a doctrine was breaking down and applauded such development. Field, p. 12. Indeed, the United States Supreme Court, which first announced the doctrine, has indicated the rule is not absolute and has further indicated its recession from that rule.
In Chicot County Drainage District v. Baxter State Bank (1940), 308 U.S. 371, 374, 60 S.Ct. 317, 84 L.Ed. 329, where the validity of a judicial decree based upon a statute subsequently declared unconstitutional was questioned, the Court indicated the broad statement that appeared in Norton must be taken with qualifications and in a later decision, the Supreme Court stated:
“. . . the effect of a given constitutional ruling on prior conduct ‘is subject to no set “principle of absolute retroactive invalidity” *320 but depends upon a consideration of “particular relations . . and particular conduct... of rights claimed to have become vested, of status, of prior determinations deemed to have finality;” and “of public policy in the light of the nature both of the statute and of its previous application.” ’ . . However appealing the logic of Norton may have been in the abstract, its abandonment reflected our recognition that statutory or even judge-made rules of law are hard facts on which people must rely in making decisions and shaping their conduct.” Lemon v. Kurtzman (1973), 411 U.S. 192, 198-199, 93 S.Ct. 1463, 36 L.Ed.2d 151. (Emphasis added.) (quoting from Linkletter v. Walker (1965), 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 and Chicot County Drainage Dist., supra.)
Both Chicot County and Lemon are civil cases but the case which announced the rule, Norton v. Shelby was also a civil action. This Court in Ex Parte Anderson (1951), 125 Mont. 331, 238 P.2d 910, 913, stated “an unconstitutional law is void, and is as no law. An offense created by it is not a crime.” The Court then invalidated an entire criminal statute because it had been preempted by federal action in the same area. In the first Coleman appeal, the statute declared unconstitutional did not define the crime, rather related only to the procedure of imposing sentence. Our action in declaring the prior statute unconstitutional did not affect the substantial elements of the crime. Moreover, the statement relied upon by the Anderson Court, found in Ex Parte Siebold (1879), 100 U.S. 371, 376, 25 L.Ed. 717, was dicta in Siebold as the Supreme Court did not find the statute there in question to be unconstitutional.
There are “hard facts” present in this appeal which this Court must consider in making its determination. A fundamental concept of our constitutional liberty is that the ex post facto clause is based upon the principle that persons have the right to fair warning of conduct which will give rise to criminal penalties. Marks v. United States, 430 U.S. at 191, 97 S.Ct. 990. The substantive portion of the aggravated kidnapping statute, enumerating the elements of the crime and declaring the quantum of punishment, has not been altered since its enactment in 1973. The changes made by the 1977 *321 statutes from the 1974 law ameliorated a mandatory death penalty to one imposed only after certain procedural steps were taken. Those procedural steps were followed in the resentencing of Dewey Coleman. At the time the crime was committed the statutes were clear that the penalty of death was a very probable consequence for the commission of the crime.
The defendant has cited this Court to cases from this and other jurisdictions and urged us to follow their precedent and hold the statutes in question here may not be applied to defendant. However, those cases can be distinguished. In State v. Rodgers (1978), 280 S.C. 285, 242 S.E.2d 215, the defendants were tried, convicted and sentenced under death penalty statutes enacted in 1974. Those statutes were later ruled unconstitutional. The State then petitioned to have the defendants resentenced under statutes promulgated in 1977 which were very likely constitutional. Those statutes provided for procedural safeguards at all phases of the criminal adjudication process from pretrial to sentencing. The South Carolina Supreme Court denied the State’s petition because the defendants therein did not receive all the procedural safeguards mandated by the 1977 enactments. 242 S.E.2d at 218. In the present cause the safeguards enacted in 1977 related only to the sentencing phase of the criminal adjudication process and the defendant here did receive those protections. In People v. Teron (1979), 23 Cal.3d 103, 151 Cal.Rptr. 633, 588 P.2d 773, the California Supreme Court refused to apply sentencing provisions enacted in 1977 to a crime committed in 1975. The statutes in effect in 1975 had been declared unconstitutional. 151 Cal.Rptr. at 640, 588 P.2d at 780. Factually the Teron case is distinguishable from the one here, because the declaration of unconstitutionality occurred in 1976 while defendant was not charged with the crime until April 1977 and the 1977 statutes did not become effective until August 1977. Therefore, when the defendant was charged with his crime there existed in fact no constitutional death penalty statutes in California. 151 Cal.Rptr. at 640, 588 P.2d at 780. Here Coleman committed the crime in 1974, was tried, convicted and sentenced in 1975, the legislature repealed the 1974 act in 1977, *322 and this Court declared the 1974 law unconstitutional in 1978. Unlike Teron, Coleman was tried, and convicted under constitutional statutes, but sentenced under a statute later declared unconstitutional.
State v. Lindquist (1979), 99 Idaho 766, 589 P.2d 101, is the strongest authority for Coleman’s “retroactive” argument. There the defendant committed his crime in 1975, was tried, convicted and sentenced in 1976. The laws were amended in 1977 and when the Idaho court considered the appeal, after declaring the laws in effect in 1975 and 1976 to be unconstitutional, it was faced with the question whether the 1977 laws could be applied on resentencing. The Court held they could not, on the basis they were retroactive. 589 P.2d at 103. However, the majority opinion devotes no discussion to what constitutes a retroactive law, assuming apparently that because the application of the 1977 laws would relate to events antecedent to their effective date, they are retroactive. 589 P.2d at 103, 104. Clearly such a discussion is necessary for, as the above discourse indicates, not all statutes relating to events antecedent to the effective date of the statutes are retroactive. The dissent of Justice Donaldson in Lindquist discusses this point. 589 P.2d at 112, 113. Thus the Lindquist opinion loses some of its authoritative impact for this lack.
Finally, in State v. Gone (1978), 179 Mont. 271, 587 P.2d 1291, this Court held that, based upon the facts there present, the application of laws enacted after the crime was committed would violate ex post facto prohibitions. 587 P.2d at 1297. In Gone, a later statute permitted the sentencing court to impose a sentence without the possibility of parole, a discretion not granted under laws in effect when the crime was committed. Clearly this later enactment allowed the punishment for the offense to be aggravated beyond that available when the offense was committed and was obviously ex post facto. However, here the later enactments do not aggravate the punishment for the crime, but only change the procedure for imposing the sentence. The punishment for the crime according to section 94-5-303(2), R.C.M.1947, now section 45-5-303(2) MCA, has always been death or imprisonment.
*323 The changes made by the 1977 enactments affected only the manner in which the penalty indicated by statute was to be determined and imposed. They did not deprive Coleman of any defense previously available nor affect the criminal quality of the act charged. Nor did they change the legal definition of the offense or the punishment to be meted out. They did not make an act criminal which was innocent when done; they did not increase the penalty for the crime. The quantum and kind of proof required to establish guilt, and all questions which may be considered by the court and jury in determining guilt or innocence, remained the same. No substantial right or immunity possessed by Coleman at the time of the commission of the offense was taken away by the 1977 enactments. Indeed they eased the rigor of the law as it existed at the time the offense was commited.
“ ‘. . . so far as mere modes of procedure are concerned, a party has no more right, in a criminal than a civil action, to insist that his case shall be disposed of under the law in force when the act to be investigated is charged to have taken place. Remedies must always be under the control of the legislature, and it would create endless confusion in legal proceedings if every case was to be conducted only in accordance with the rules of practice ... in existence when its facts arose. The legislature may . . . prescribe altogether different modes of procedure in its discretion, though it cannot lawfully . . . dispense with any of those substantial protections with which the existing law surrounds the person accused of the crime.’ ” Thompson v. State of Utah, 170 U.S. at 351, 352, 18 S.Ct. at 623 (quoting with approval from Cooley on Constitutional Limitations); People v. Ward (1958), 50 Cal.2d 702, 328 P.2d 777, 780. The statutes in question also did not impair vested rights, or create new duties, obligations, or disabilities with respect to transactions already past.
Only if we were to adhere rigidly to the rule of construction announced in Norton v. Shelby, supra, that a statute declared unconstitutional is treated as never having had an operational effect, could the 1977 statutes be read to interfere with the substantial *324 rights of Dewey Coleman. Yet the absolute application of this rule has been abandoned by the Court which promulgated it, the United Sates Supreme Court. To follow the rule here, as this Court must in order to find an ex post facto violation or “retroactive” effect, would be impliedly stating Dewey Coleman at the time he committed his crime had the omniscience that four years hence the statute prescribing the procedure for imposing the penalty for the crime would be declared unconstitutional and that at the time the crime was committed no valid procedure existed. Clearly such a conclusion stretches reason to the breaking point.
We therefore hold that the District Court properly applied the 1977 statutes relating to the imposition of the death penalty to this defendant.
Having decided no ex post facto violations nor transgressions of the rule against retroactive statutes have occurred, and the 1977 statutes are applicable here, we reach defendant’s arguments that these statutes are unconstitutional. At the outset, we note the Supreme Court has held the punishment of death does not invariably violate the constitutional prohibition against cruel and unusual punishment, Gregg v. Georgia (1976), 428 U.S. 153, 187, 96 S.Ct. 2909, 49 L.Ed.2d 859. Furthermore, the Gregg court indicated that in the abstract, a penalty is not excessive if it does not involve the wanton and unnecessary infliction of pain and is not grossly out of proportion to the severity of the crime. 428 U.S. at 173, 96 S.Ct. 2909. Finally, the court stated it must presume the validity of a punishment selected by a democratically elected legislature. 428 U.S. at 175, 96 S.Ct. 2909.
As we stated in State v. McKenzie (1978), 177 Mont. 280, 581 P.2d 1205, 1228, 35 St.Rep. 759, the United States Supreme Court in its decisions of Gregg; Proffitt v. Florida (1976), 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913; and Jurek v. Texas (1976), 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929, seems to have established three general criteria which are requisite to a valid scheme for imposing the death penalty. First, there must be at least one statutory aggravating circumstance before a death sentence may be con *325 sidered. Second, the defendant must be afforded the opportunity to bring before the sentencing body at a separate sentencing hearing any mitigating circumstances relating to the individual defendant. Third, there must be available prompt judicial review of the sentencing decision by a court of statewide jurisdiction, providing a means to promote the evenhanded, rational and consistent imposition of death sentences under the law. A refinement of the second criterion was added by the decision in Lockett v. Ohio (1978), 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973, that the sentencing body must not be precluded from considering any aspect of the defendant’s record or character as a mitigating factor. 438 U.S. at 589, 98 S.Ct. at 2957, 57 L.Ed.2d at 980. The death penalty must also not be imposed mandatorily without only consideration of mitigating factors. Coleman, 579 P.2d at 741-742.
Sections 95-2206.6 and 95-2206.7, R.C.M.1947, now sections 46-18-301 and -302 MCA provide for a separate sentencing hearing in death penalty cases at which the sentencing court may consider any evidence relevant to the sentence and at which the defense may argue against the penalty. Sections 95-2206.8 through 2206.10, R.C.M.1947, now sections 46-18-303 through -305 MCA enumerate aggravating and mitigating factors to be considered and direct the sentencing court to consider one against the other. Section 95-2206.11, R.C.M.1947, now section 46-18-306 MCA provides for written findings supporting the determination of the court in cases where a death penalty is imposed. Sections 95-2206.12 through -2206.15, R.C.M.1947, now sections 46-18-307 through -310 MCA provide for an expedited review of the death penalty sentence and set forth standards by which this Court must review the sentence.
Defendant argues sections 95-2206.8, -2206.9, -2206.10, R.C.M.1947, now sections 46-18-303, -304, -305 MCA do not allow for the proper consideration of mitigating circumstances and in effect impose a mandatory death penalty should one of the statutory aggravating circumstances be found. Defendant’s conception of the operation of these provisions is much too restricted *326 and we do not agree that they in effect mandate a death penalty whenever an aggravting circumstance is found.
Section 95-2206.10, R.C.M.1947, now section 46-18-305 MCA, instructs the sentencing court to take into account the aggravating and mitigating circumstances enumerated in sections 95-2206.8 and -2206.9 and to impose a sentence of death “if it finds one or more of the aggravating circumstances and finds that there are no mitigating circumstances sufficiently substantial to call for leniency.” (Emphasis added.)
The United States Supreme Court has held the Eighth and Fourteenth Amendments require consideration of the character and record of the individual offender and the circumstances of the particular offense in a determination whether to impose the death penalty. Woodson v. North Carolina (1976), 428 U.S. at 303-305, 96 S.Ct. 2978. In Jurek, the Court had before it a statutory scheme that explicitly mentioned only aggravating circumstances, yet the Court found the scheme constitutional in light of the Texas Appeals Court’s construction of the scheme requiring consideration of mitigating factors. 428 US., at 272-273, 96 S.Ct. 2978. Clearly Montana’s statutes go farther than those approved in Jurek by explicitly requiring consideration of mitigating circumstances, thus making subjective the sentencing determination as required by Woodson. We do not read sections 95-2206.8 through 95-2206.10, R.C.M.1947, now sections 46-18-303 through 46-18-305 MCA as mandating the death penalty upon the finding of an aggravating circumstance, but rather as requiring consideration of whatever mitigating circumstances exist to determine if they outweigh the aggravating circumstances found to be present.
Defendant argues that Montana’s death penalty statutes would be subject to reversal by the U.S. Supreme Court because of that court’s decision in Lockett v. Ohio, supra, and its vacation and remand in light of Lockett in Jordan v. Arizona (1978), 438 U.S. 911, 98 S.Ct. 3138, 57 L.Ed.2d 1157. An examination of these cases leads us to the opposite conclusion. Basically Lockett held a sentencing entity should not be precluded from considering any aspect *327 of a defendant’s character or record as a mitigating factor. The Ohio statutes enumerated three mitigating factors to be considered in imposing the death penalty and the Supreme Court read this as limiting the range of factors considered and to exclude other possibly relevant factors. 438 U.S. at 606-607, 98 S.Ct. at 2965-2966, 57 L.Ed.2d at 991-992. Similarly in Jordan, the Arizona scheme enumerated mitigating factors and required their consideration in language identical to Montana’s statute. See Jordan v. Arizona (1976), 114 Ariz. 452, 561 P.2d 1224. However, the Arizona enumeration, like the Ohio enumeration is on its face exclusive, thus warranting the vacation of the death penalty and remand in light of Lockett. Montana’s statute does not suffer from this defect. Although it enumerates mitigating factors, section 95-2206.9(1) through (7), R.C.M.1947, now section 46-18-304(1) through (7) MCA, it also clearly indicates the sentencing body should consider any other Jact existing in mitigation of the penalty. Section 95-2206.9(8), R.C.M.1947, now section 46-18-304(8) MCA. This inclusive factor was not present in either the Ohio or Arizona scheme.
Defendant also contends because he received the death penalty for aggravated kidnapping but only a life sentence for deliberate homicide, the death penalty imposed constitutes the cruel and unusual punishment prohibited by the Eighth Amendment. We do not agree. As was made clear in Williams there is no constitutional requirement for the same or proportionate sentences when the crimes are separate and independent. 358 U.S. at 586, 79 S.Ct. 421. We have indicated above the crimes of deliberate homicide and aggravated kidnapping are separate and independent crimes and defendant’s conviction of each violated no double jeopardy protections. Furthermore, the Supreme Court in Gregg, made clear “when a life has been taken by an offender [it cannot be said] the punishment [of death] is invariably disproportionate to the crime.” 428 U.S. at 187, 96 S.Ct. at 2932. The decision of the Court in Coker v. Georgia (1977), 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982, is relevant only to crimes for which the penalty has been im *328 posed which did not result in the loss of a life. Such is not the case here.
We have considered defendant’s contentions with respect to jury participation in the sentencing procedure and with respect to statutory requirements of a finding of guilty beyond a reasonable doubt in a case where death is a possible penalty and determine these contentions do not alter our conclusion as to the constitutionality of sections 95-2206.6 through 95-2206.15, R.C.M. 1947, now sections 46-18-301 through -310 MCA.
This Court therefore concludes that Montana’s statutory scheme for imposing the death penalty meets the standards established by the Gregg, Jurek, Proffitt and Woodson decisions. We further conclude the penalty is not cruel and unusual simply because Montana’s criminal statutes allow its imposition in this case for the crime of aggravated kidnapping but not for the crime, as committed here, of deliberate homicide.
We turn now to defendant’s contention that his counsel was not permitted to present arguments against imposition of the death penalty, contrary to the mandate of section 95-2206.7 now section 46-18-302 MCA, which states in pertinent part: “The state and the defendant or his counsel shall be permitted to present argument for or against sentence of death.” Defendant maintains because it appears from the record that the District Court had already determined the sentence prior to the July 10, 1978 date set for pronouncing sentence, defendant was denied the opportunity to present any arguments against the death penalty. This contention is without merit. The District Court issued an order dated June 2, 1978, clearly indicating a sentencing hearing was to be held on June 14, 1978, in accordance with sections 95-2206.6 through 95-2206.11, R.C.M.1947, now sections 46-18-301 through -306 MCA. Those sections indicate what a sentencing court must consider in imposing the death penalty, including specifically that defendant or his counsel be allowed to present argument against the death penalty.
Therefore by the June 2, 1978 order, the defendant and his *329 counsel were on notice of the proposed content of that hearing, defendant did not present any evidence of mitigating circumstances other than the presentence report. No statement against the death penalty was made other than to suggest certain procedures to test its constitutional validity before it was in fact imposed. Defendant had his opportunity to speak and did not avail himself of it. Finally, the District Court order of July 31, 1978, denying defendant’s petition for rehearing indicates the defendant also did not take advantage of the District Court’s offer to accept proposed findings and conclusions from the parties with respect to the sentence. Thus defendant and his counsel had at least two opportunities to submit argument to the Court regarding the death penalty prior to the July 10, 1978 hearing, but did not do so.
We have determined thus far that defendant’s conviction for aggravated kidnapping violated no constitutional prohibitions against double jeopardy, that the 1977 provisions for imposition of the death penalty are applicable to this defendant and furthermore are constitutional, and that this defendant was given an opportunity to present arguments against the death penalty. We come now to that part of this appeal which constitutes a review of the sentence received by defendant. In conducting this review, we will consider defendant’s arguments regarding the proportionality of the penalty received in relation to other factors.
The decision in Gregg compels this Court to determine “whether the punishment of death is disproportionate in relation to the crime for which it is imposed.” Gregg, 428 U.S. at 187, 96 S.Ct. at 2931. In undertaking such a consideration, we are directed by section 95-2206.15, R.C.M.1947, now section 46-18-310 MCA to consider whether the sentence was imposed as a result of passion, prejudice or other arbitrary factors; whether evidence supports the sentencing court’s findings regarding aggravating and mitigating circumstances; and whether the sentence is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and defendant. We make such an assessment based upon our independent review of the trial record and transcript, and of *330 the record and transcript of the sentencing hearing. In so doing, we are not usurping the position of the District Court as the primary sentencing entity in Montana’s sytem of criminal jurisprudence (see section 95-2212, R.C.M.1947, now section 46-18-103 MCA); rather we mean to insure that, a penalty as unique in its severity and as irrevocable as the death penalty is not wantonly and freakishly, or arbitrarily and capriciously imposed. See, Furman v. Georgia (1972), 408 U.S. 238, 309-310, 92 S.Ct. 2726, 33 L.Ed.2d 346 (Stewart, J., concurring); Gregg, 428 U.S. at 188-189, 96 S.Ct. 2909.
Defendant has argued the sentence imposed here was a result of passion, prejudice or other arbitrary factors. We have considered defendant’s arguments in this regard and determined that two warrant discussion. Defendant argues the sentences given to Robert Dennis Nank, defendant’s accomplice in this crime, when compared to his own reflect the prejudice inherent in the sentencing. Nank, a white man, pled guilty to the offenses of deliberate homicide and solicitation to commit sexual intercourse without consent and received 100 year and 40 year sentences respectively. Defendant argues because he is black, his sentence of death for crimes arising from the same incident as those of Nank’s reflects obvious prejudice. We do not agree. Nank and this defendant received similar sentences for similar crimes namely, 100 years for deliberate homicide and 40 and 20 years respectively for the charges stemming from the act of sexual intercourse without consent. However, defendant was also found guilty of aggravated kidnapping, a charge finally dropped against Nank. It is for this crime the death penalty was imposed. Defendant is correct in his assertion the prosecution refused to accept his guilty plea to the same charges to which Nank had pled guilty. Defendant offered to plead guilty to the same charges to which Nank had pled guilty, however he insisted such plea must indicate he was innocent. The prosecution refused to accept this offer and we have previously held the refusal of a conditional offer not to be erroneous. State v. Coleman, 579 P.2d at 744-745. We do not find prejudice in defendant’s *331 sentencing simply because of the sentences his accomplice received.
Defendant has also argued his race was a factor operating to his prejudice with respect to the imposition of the death penalty. However defendant points to no evidence of this prejudice other than the fact of the sentence and the fact of his race. Defendant has speculated as to various possible factors evidencing such prejudice, but speculation is not sufficient to establish this claim. We have examined the sentence and determine it was not imposed as a result of passion, prejudice or other arbitrary factors, or because of his race.
Defendant contends there was evidence of mitigating factors present and the District Court did not give proper consideration to evidence when making its findings, conclusions, and when rendering judgment. The District Court is required by section 95-2206.10, R.C.M.1947, now section 46-18-305 MCA to consider and compare aggravating and mitigating circumstances and can impose the death penalty only if there exists at least one aggravating circumstance and no mitigating circumstances of sufficient substantiality to call for leniency. Section 95-2206.10, R.C.M.1947, now section 46-18-305 MCA. This Court is required upon review of the sentence to determine whether there is evidence to support the District Court’s findings and conclusions regarding aggravating and mitigating circumstances. Defendant admits the District Court properly found and concluded that the aggravating factor found in section 95-2206.8(7), R.C.M.1947, now section 46-18-303(7), MCA (death of the victim of aggravated kidnaaping) was present. What we now determine is whether the District Court was correct in its conclusion that there was no evidence of mitigating factors sufficiently substantial to call for leniency.
Defendant presented no evidence of mitigating circumstances at the sentencing hearing, though his counsel acknowledged the existence of the presentence investigation report. That report indicated the defendant had no record of criminal activity and had been an accepted member of the community where he lived prior *332 to July 4, 1974, the date of the commission of this crime. The evidence in this case supporting the finding of the aggravating circumstance established that the defendant had been a deliberate, voluntary participant in the kidnapping and subsequent rape and murder of the victim. The evidence further established that the death of the victim occurred after a sexual assault, not in a moment of passion, but over a period of time with the defendant first bludgeoning, then attempting to strangle, then finally drowning the victim in an effort to effectuate a deliberate decision to kill Peggy Harstad. Against the record of this brutal crime, we cannot say that the defendant’s lack of prior criminal activity of record is a factor sufficiently substantial to call for leniency. Moreover, the District Court did consider the mitigating circumstance of defendant’s lack of a criminal record but concluded this circumstance was offset by evidence that defendant had committed a burglary on the same day the kidnap, rape and homicide occurred. Defendant has argued accomplice Nank’s testimony, the source of this evidence, was uncorroborated as to this fact. However, Nank was sufficiently corroborated on other aspects of his testimony and we have so held. Coleman 579 P.2d at 748. Where an accomplice has been corroborated as to part of his testimony and that testimony has been accepted as truthful, it is proper for the court to infer the accomplice spoke the truth as to all his testimony. State v. Phillips (1953), 127 Mont. 381, 264 P.2d 1009, 1016; Territory v. Corbett (1877), 3 Mont. 50; Roberts v. State (Okl.Crim.1977), 571 P.2d 129 cert. den. 434 U.S. 957, 98 S.Ct. 485, 54 L.Ed.2d 316; People v. Blau (1956), 140 Cal.App.2d 193, 294 P.2d 1047; State v. Gross (1948), 31 Wash.2d 202, 196 P.2d 297; 23 C.J.S. Criminal Law, § 812(2). See also, State v. Jones (1933), 95 Mont. 317, 26 P.2d 341. We therefore determine the District Court was correct in its conclusion.
We now must compare this sentence to those imposed in similar cases to determine whether it was excessive or disproportionate to those other sentences. Section 95-2206.15, R.C.M.1947, now section 46-18-310 MCA. As this is the frist time this Court has reviewed a sentence of death under the new statutory scheme, we are *333 obligated to define the scope of our review when considering similar cases.
It is clear from the decision in Gregg that the purpose of appellate review in a capital-sentencing system is to serve as “a check against the random or arbitrary imposition of the death penalty.” 428 U.S. at 206, 96 S.Ct. at 2940. (Emphasis added.) This review eliminates the possibility a death sentence will be imposed by the action of an “aberrant” sentencing entity. Gregg, supra. The Georgia Supreme Court, construing language identical to that in our own statutes, has stated in considering similar cases:
“. . . this court is not required to determine that less than a death sentence was never imposed in a case with some similar characteristics. On the contrary, we view it to be our duty under the similarity standard to assure that no death sentence is affirmed unless in similar cases throughout the state the death penalty has been imposed generally and not ‘wantonly and freakishly’ imposed as stated by Justice Stewart in his concurring opinion in [Furman, supra].” Moore v. State (1975), 233 Ga. 861, 213 S.E.2d 829, 832 (cited with approval in Gregg, 428 U.S. at 205, 96 S.Ct. 2909). (Emphasis added.)
The emphasis in both Gregg and Moore is on the imposition of the penalty, not upon the subsequent outcome of any appeal from that imposition. See also, Jarrell v. State (1975), 234 Ga. 410, 216 S.E.2d 258; Gregg v. State (1974), 233 Ga. 117, 210 S.E.2d 659. Indeed, Georgia has indicated it will consider cases where the penalty has been imposed by the jury but vacated on appeal for reasons not material to the sentence. Stanley v. State (1977), 240 Ga. 341, 241 S.E.2d 173, 180. Therefore, we conclude in fulfilling our duty to compare “similar cases” we may include for comparision similar cases where the sentence has been imposed by the District Court, even though the sentence has been vacated on appeal. Of course, such vacation must not have been predicated upon the sentencing court’s acting in a manner contrary to the standards set forth in section 95-2206.15, R.C.M.1947, now section 46-18-310 MCA, nor have resulted in a complete dismissal of the *334 cause. Furthermore, based upon Gregg, 428 U.S. at 204-206, 96 S.Ct. 2909, and Proffitt, 428 U.S. at 258-259, 96 S.Ct. 2960, we determine we need not examine every similar case whether appealed or not, rather we need only examine those cases where after conviction the death penalty could have been or was imposed that have reached our attention through the appellate process. Because it is extremely rare that a defendant would acquiesce in a death sentence, we believe this procedure will insure we have a more than adequate representation of “similar cases.” We will thus consider cases where the defendant has been charged with kidnapping and murder of the victim of the kidnapping and where the defendant has been charged with aggravated kidnapping where the victim has been killed.
A complicating factor in our review of similar cases is that the last hanging of a criminal defendant in Montana occurred in 1943. In the following quarter of a century, although several heinous murders occurred, the death penalty was assessed only a few times by District Courts. During that period the sentencing entity had unfettered and unguided discretion with repsect to imposition of the death penalty. Judicial and legislative attitudes have changed, however, and in the last six to eight years, death penalty revisions have been enacted and such penalties imposed, spurred perhaps by the growing incidence of such serious crimes. Moreover, the crime of aggravated kidnapping has been a part of our statutory law only since 1973. Any review of cases earlier than this decade is virtually meaningless because the death penalty was not involved unless one goes far back into our state history. There are cases, however, though not large in number, to which we can look for a meaningful comparison.
The defendants in State v. Rhodes (1974), 164 Mont. 455, 524 P.2d 1095, were charged with and convicted of first-degree murder, kidnapping, and robbery. The defendants had escaped from jail in Idaho, kidnapped Donald Kalberg in Montana, who was later found shot to death near Forsyth, Montana, and were later apprehended in Tennessee after kidnapping one other person. *335 The evidence was clear that the defendants had committed the kidnapping and the “vicious, wanton, cold-blooded murder of Donald Kalberg.” 524 P.2d at 1097. The District Court sentenced the defendants to death for the murder charge, and to the maximum penalty allowable for kidnapping, 10 years imprisonment. The sentence of the court for the murder charge was vacated by this Court as a result of the decision in Furman. It was not vacated for actions by the District Court contrary to the standards contained in section 95-2206.15, R.C.M.1947, now section 46-18-310 MCA, nor were the charges dismissed by this Court. 524 P.2d at 1098.
The defendant in State v. McKenzie (1978), 177 Mont. 280, 581 P.2d 1205, was charged with deliberate homicide and aggravated kidnapping as a result of the bludgeoning death of Lana Harding. The District Court imposed the death penalty for both offenses and this Court affirmed following remand from the United States Supreme Court. 581 P.2d at 1235. The victim was found draped over a grain drill, partially nude, with a rope tied around her neck, and severely beaten about the head and body. 581 P.2d at 1210. Death had been caused by the severe blows.
These are the convictions that we can construe as “similar cases.” We note that it is only since 1973 that the death penalty could be imposed for aggravated kidnapping where the victim has been killed. In the case of McKenzie, where that circumstance has occurred, the penalty has been invoked. We also note Montana is a sparsely populated state and crimes of such violent nature do not occur as frequently here as they do in more densely populated states. We conclude the penalty of death imposed against this defendant for the aggravated kidnapping of Peggy Harstad which resulted in her death, was not excessive or disproportionate to the penalty imposed in similar cases in this state.
Defendant has argued that his sentence is disproportionate and excessive when compared to the sentences received by his accomplice, Robert Dennis Nank. We have already distinguished the situations of these two persons above. Nank was sentenced only for deliberate homicide and solicitation to commit sexual intercourse *336 without consent, the charge of aggravating kidnapping having been dismissed in return for his guilty plea and testimony at defendant’s trial. Therefore, defendant’s sentence of death for aggravated kidnapping is not excessive or disproportionate when compared to the sentences received by Robert Dennis Nank. Leniency in one case does not invalidate the death penalty in others. Gregg, 428 U.S. at 199, 224-226, 96 S.Ct. 2909.
We come to the final issue in this appeal: whether upon review of the sentence imposed, this Court must reconsider issues regarding the merits of the cause raised and disposed of in the first Coleman appeal. We conclude we do not. Our examination of the record to review the imposition of the death penalty under the provisions of sections 95-2206.12 to 95-2206.15, R.C.M.1947, now sections 46-18-307 to -310 MCA, is not to reconsider determinations of merits already made, but to determine whether in light of such determinations the sentence has been equitably imposed. Our prior determination of an issue constitutes a final adjudication of that issue. Belgrade State Bank v. Swainson (1978), 176 Mont. 444, 578 P.2d 1166, (per curiam).
Defendant has argued the first Coleman decision as to certain issues was conditioned upon finding the death penalty invalid, thus a finding now that the penalty was validly imposed necessitates a reconsideration of those issues. An examination of the first Coleman opinion reveals the holdings of this Court which defendant alleges were dependent upon finding the death penalty constitutionally invalid, were made clearly without such dependency. Coleman, 579 P.2d at 745, 749, 752.
Judgment of the District Court is affirmed, except that the cause is remanded to the District Court for the purpose of resetting the execution date of the defendant, Dewey Eugene Coleman; said execution to be supervised by the sheriff of the county where he was tried. Section 46-19-103(3) MCA. If defendant or defendant’s counsel should wish, he may submit a list of any other similar Montana cases that he may request us to review for comparative pur *337 poses, within the time provided for and as a part of any petition for rehearing in this cause.
MR. CHIEF JUSTICE HASWELL and JUSTICES HARRISON and DALY concur.