No. 85-176

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

THE STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

DAVID CAMERON KEITH,

Defendant and Appellant.

APPEAL FROM: District Court of the Twentieth Judicial District,
In and for the County of Lake,
The Honorable Robert Holter, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

George B. Best, Jr. argued, Kalispell, Montana
J. Mayo Ashley argued, Helena, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Kimberly A. Kradolfer argued, Asst Atty General
Larry Nistler, County Attorney, Polson, Montana

Submitted: December 22, 1987

Decided: March 23, 1988

Filed:

Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Defendant, David Cameron Keith plead guilty on March 28, 1985 to two charges of aggravated assault, two charges of aggravated kidnapping, and one charge of deliberate homicide. The pleas were received by the Honorable Robert M. Holter. Defendant received a sentence of death for one of the aggravated kidnapping charges and an additional sentence of death for the deliberate homicide charge. A prison term totalling 146 years was rendered on the remaining charges. Appeal is pursued according to the automatic review of sentence provided by §§ 46-18-307 to -310, MCA.

We reverse the sentence of death for the deliberate homicide charge only and affirm in all other respects.

Factual Background

On January 11, 1984, at approximately 1:00 p.m., the defendant, David Keith, committed a robbery of a pharmacy in Missoula, Montana. Keith left Missoula by vehicle and later traveled north into Lake County on Highway 93. Approximately three hours after the robbery, Keith's vehicle was observed by a police officer in the area of St. Ignatius. Believing the vehicle was connected with the earlier robbery in Missoula, law enforcement personnel followed the vehicle as it traveled north on Highway 93 toward Polson.

Approximately four miles north of St. Ignatius the vehicle stopped at the Post Creek Store and defendant Keith exited the vehicle. Keith entered the store with a drawn gun and took William Crose, Jr., age 13, as his hostage by pointing a pistol at his head. While still inside the store, Keith was startled when a store clerk, Delores Coffman, moved for cover. Keith fired a shot in her direction but she was

2

not struck. The bullet narrowly missed her head and was estimated to have missed by as little as four inches. Keith later indicated he did not wish to harm Coffman and testified the shot was merely a scare tactic.

Forcing William Crose, Jr. to accompany him, Keith left the Post Creek Store in a vehicle belonging to the boy's father. Keith again drove north on Highway 93 toward Polson. Somewhere south of Polson, law enforcement officials stopped Keith with a roadblock. Keith exited the vehicle and exchanged conversation with the law enforcement officials. Still holding his gun to the hostage's head, Keith indicated he would shoot his hostage if his demands were not met. Keith demanded that the officials supply him with an airplane, pilot, and parachute. Law enforcement officials continued to attempt to negotiate with Keith, and he was eventually allowed to proceed to the Polson airport.

A small aircraft was located and provided for Keith upon his arrival at the airport. A local pilot, Harry Lee Shryock, Jr. age 64, agreed to board the plane in exchange for the release of the young hostage. After Shryock boarded the plane, Keith released William Crose, Jr. and then boarded the plane himself. Shryock had difficulties starting the airplane engine and the record is not entirely clear as to whether this was purely a stall tactic or if genuine difficulties were encountered.

During the time period that Shryock was attempting to start the plane, the law officers were able to view Keith on several occasions through the doorway of the plane. During these time periods, Keith was pointing his gun at Shryock. A deputy armed with a rifle was positioned some distance away and was observing Keith's movements through his rifle scope. The final time Keith was visible through the doorway it appeared that Keith was not pointing his gun at the pilot.

Seizing this apparent opportunity, the deputy shot Keith. The bullet struck Keith in the right arm and entered his chest area. Keith then fired a shot into Shryock's head resulting in his death. Subsequently, Keith exited the plane and was shot in the back of the head by a law enforcement officer positioned near the plane.

Keith's initial pleadings indicated he alleged the shot which killed Shryock was fired as a reflex action and would not have occurred if he had not been shot himself. However, he has since changed that position and has entered a plea of guilty to deliberate homicide by purposely or knowingly causing the death of Shryock "by shooting him in the head with a bullet from a handgun." The District Court found that the killing was in execution style and that Keith thought he was dying and took Shryock's life "because he didn't want to go alone." Additionally, prior to sentencing, a presentence investigation report was prepared. An updated report was provided on April 4, 1985, which stated that Keith had made a written statement which stated, in part, "immediately after [being shot] I came to the conclusion that I was going to die, I didn't want to go alone so I fired my pistol into the back of the head of Mr. Harry Shryock." At the sentencing hearing on April 10, 1985, the District Court made the presentence report part of the record after giving Keith a liberal opportunity to object to any portions of the report. No objections were made to the inclusion of this statement.

Procedural Background

Keith was charged with seven crimes: (1) aggravated assault, § 45-5-202, MCA (victim: Delores Coffman); (2) aggravated assault, § 45-5-202, MCA (victim: William Crose, Jr.); (3) aggravated kidnapping, § 45-5-303, MCA (victim: William Crose, Jr.); (4) aggravated assault, § 45-5-202, MCA

4

(victim: Harry Shryock); (5) aggravated kidnapping, § 45-5-303, MCA (victim: Harry Shryock); (6) deliberate homicide, § 45-5-102(1)(a), MCA (victim: Harry Shryock); and (7) deliberate homicide pursuant to the "felony-murder rule," § 45-5-102(1)(b), MCA (victim: Harry Shryock).

Represented by defense counsel Keith Rennie, defendant Keith appeared in District Court on February 8, 1984 and was ordered to Warm Springs to receive psychiatric and medical examinations and care. The major purpose was to determine if Keith could assist in his own defense and if he was able to understand the proceedings against him. See, § 46-14-103, MCA. Subsequently, a number of opinions were rendered regarding this determination.

An initial medical opinion filed March 12, 1984 by H. Robert Stehman, a state psychologist, concluded Keith was unable to understand the charges or to assist in his defense and recommended further observation. State psychiatrist H. C. Xanthopoulos concurred in the opinion. Keith was then temporarily committed to Warm Springs. On June 8, 1984, William Stratford, M.D. rendered the opinion that Keith was competent to proceed. However, in an opinion filed June 15, 1984, Roy Hamilin, psychologist, stated Keith was still incompetent. Dr. Xanthopoulos also signed the opinion. An additional opinion was filed on June 27, 1984 by Herman Walters, Ph.D., clinical psychologist, in which he concluded Keith was competent to proceed. On June 27, 1984, the State moved for a hearing to determine Keith's fitness to proceed. Dr. H.C. Xanthopoulos filed an opinion on August 21, 1984 and concluded Keith was "[w]ell oriented as to time, place and person . . . Judgment is fair. Abstract thinking and general information are good . . . Patient is not mentally ill."

A hearing to determine whether or not Keith had the fitness to proceed with the case was held September 13, 1984.

5

Keith did not contest the findings in the reports concluding he was competent to proceed, nor did he contest his fitness to proceed. The District Court found he was competent to proceed and able to assist in his own defense. Keith entered an innocent plea to all seven charges.

On October 11, 1984, the District Court changed venue for trial from Lake County to Lincoln County. Keith requested a new attorney and Gary Doran was appointed principal counsel with Rennie remaining as co-counsel. Subsequently Keith requested that Doran be removed. The District Court removed Doran and appointed George Best principal counsel November 29, 1984.

A plea bargain proposal was presented February 5, 1985 in which Keith was to plead guilty to the aggravated kidnapping of William Crose, Jr. and the State would dismiss the remaining charges. The State was to recommend a life sentence with possible parole and that Keith's health be considered as a factor for possible early parole. A presentence investigation was filed March 21, 1985. On March 28, 1985, the District Court refused to accept the plea bargain. Following the refusal, Keith plead guilty to counts one thru six.

A sentencing hearing was held April 10, 1985. Keith testified he was not under the influence of drugs when the crimes were committed and refused to withdraw his pleas. The District Court sentenced Keith to a total of 146 years for two charges of aggravated assault and one charge of aggravated kidnapping. Keith was sentenced to death for the aggravated kidnapping of Shryock and an additional death sentence was rendered for the deliberate homicide of Shryock. The remaining homicide charge was dismissed and the remaining aggravated assault charge was found to be duplicitous.

A stay of execution was filed June 6, 1985 so as to allow the appeal process to proceed, and briefs for the appellant Keith were filed October 16, 1985. On October 9, 1985 Keith's counsel entered a motion to withdraw the guilty pleas. On November 14, 1985 this Court remanded the case to the District Court to determine whether it would be proper to allow the plea withdrawal.

On December 4, 1985 the defense filed a motion to disqualify District Judge Holter and this Court ordered District Judge Henry Loble to hear and determine the disqualification argument. A hearing was held on the disqualification issue February 4, 1986, and the motion was denied April 3, 1986, because the defense failed to show prejudice or bias and because the motion was not timely.

Pursuit of Discretionary Appeals

It is apparent that Keith holds a personal viewpoint of the appeal process in which he does not desire to pursue any appellate review unless required to do so by law. Keith has consistently maintained this viewpoint since at least April 2, 1986. Defense counsel Best attempted to withdraw because he believed he could not adequately represent Keith if he insisted on not pursuing all possible issues on appeal. On April 21, 1986 a motion was entered to appoint a "next friend" for Keith. Although the precise role of a "next friend" is not entirely clear, it appears that this individual would be given authority to assist, advise and make legal arguments and motions on Keith's behalf. Involved in this motion was Leo Driscoll, an attorney from Spokane, Washington, who at one time practiced law with Keith's father.

On July 7, 1986, the District Court denied the motion for appointment of next friend and ordered additional psychiatric evaluations to determine whether Keith was

7

competent to enter his guilty pleas. On November 12, 1986, the District Court held a hearing to determine Keith's competence to enter his guilty pleas. Testimony and reports were received by four experts and all concluded or strongly implied Keith was competent to enter a plea. No medical expert testified that Keith was not competent to enter his plea. On November 28, 1986, the District Court found that Keith was sufficiently competent to enter a plea and entered the following conclusions of law:

> 1. The Defendant, David Cameron Keith, does not suffer from any mental disease, disorder, or defect which substantially affects his capacity in the premises.
>
> 2. Defendant has the capacity to appreciate his position as a convicted and condemned person.
>
> 3. Defendant has the capacity to appreciate the penalty imposed upon him.
>
> 4. Defendant has the capacity to make rational choices with respect to continuing or abandoning further litigation.
>
> 5. Defendant has the capacity to make rational choices with respect to acting or assisting in his own defense.
>
> 6. Defendant has the capacity to instruct his attorney to suspend all proceedings in the district court.

Additionally, the District Court found that Keith requested a dismissal of his motion to withdraw his guilty plea. The motion was therefore dismissed in the order accompanying the District Court's findings of fact and conclusions of law.

Keith continued to insist that none of his discretionary appeals be pursued. On March 30, 1987 defense counsel Best again moved to withdraw. The District Court

8

appointed Mayo Ashley as counsel for Keith on May 8, 1987, but retained Best as standby counsel. On May 5, 1987 this Court issued an order allowing defense counsel 45 days to determine whether any issues would be appealed besides those which were mandatory. On June 19, 1987, defense counsel Ashley entered a notice that it was Keith's intention to file only mandatory appeals. Ashley still suggested that this Court consider all of the issues contained in the appellant's two briefs. On July 14, 1987, this Court ordered that review be limited to only those issues which are mandatory and contained in § 46-18-310, MCA:

> Supreme court's determination as to the sentence. The supreme court shall consider the punishment as well as any errors enumerated by way of appeal. With regard to the sentence, the court <u>shall</u> determine:
>
> (1) whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor;
>
> (2) whether the evidence supports the judge's finding of the existence or nonexistence of the aggravating or mitigating circumstances enumerated in 46-18-303 and 46-18-304; and
>
> (3) whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. The court shall include in its decision a reference to those similar cases it took into consideration. (Emphasis added.)

After reviewing this issue, we conclude that our order on July 14, 1987 was correct and that defendant Keith has the right to limit his appeal to only those issues that must be reviewed according to § 46-18-310, MCA. Keith has clearly

expressed his intent to pursue only those appellate issues which must be reviewed as a matter of law. Keith has been adjudged competent to make such a choice and we will not interfere with his choice. The issue is not what others would do if faced with this decision, but what defendant Keith desires to do. Keith's decision must be respected if it is made competently, voluntarily, intelligently, and with full knowledge of the consequences.

Although this is an issue of first impression in Montana, we believe the results of cases originating in jurisdictions outside Montana support our decision. See, Gilmore v. Utah (1976), 429 U.S. 1012, 97 S.Ct. 436, 50 L.Ed.2d 632; and Judy v. State (Ind. 1981), 416 N.E.2d 95. See also, Lenhard v. Wolff (9th Cir. 1979), 603 F.2d 91; stay temporarily granted (1979), 443 U.S. 1306; stay denied (1979) 444 U.S. 807. Based on the facts contained in the record, we hold that defendant Keith's decision was made competently, voluntarily, intelligently, and with full knowledge of the consequences.

## Issues Presented

(1) Are the sentences of death excessive or disproportionate punishments as established by other Montana sentences for similar crimes?

(2) Was the imposition of the death penalty for aggravated kidnapping excessive or disproportionate when the aggravated kidnapping charge did not charge defendant with purposely or knowingly causing the death of the victim?

(3) Did the District Court fail to adequately consider the mitigating factors provided in § 46-18-304, MCA?

(4) Was the sentence of death imposed under the influence of passion, prejudice, adverse publicity and fear of community objection?

10

(5) Does the evidence support the District Court's findings of an aggravating circumstance regarding the aggravated kidnapping charge?

(6) Did the District Court properly find the existence of an aggravating circumstance regarding the deliberate homicide charge?

We must comply with the provisions of § 46-18-310, MCA, in our consideration of its provisions in determining a death sentence. We note that § 46-18-310(2), MCA, requires a discussion of § 46-18-303, MCA as well as § 46-18-304, MCA. This we will do.

I. CONSIDERATIONS OF SIMILAR CASES AND PUNISHMENTS RENDERED.

Keith's counsel contends that both sentences of death are excessive and disproportionate punishments compared to other Montana sentences for similar crimes and therefore violate § 46-18-310(3), MCA. Keith cites a statistical analysis to demonstrate that the average sentence for a conviction of deliberate homicide in Montana during 1982 and 1983 was 72 years. Despite these statistics, Keith fails to identify any similar cases where the death penalty was not imposed. Keith's citation to statistics fails because it does not establish that the death sentences are necessarily disproportionate under the facts and circumstances of the present situation.

Keith states the death sentences are disproportionate or excessive because no individual or official connected with the case recommended or desired the death sentences. Defendant states the prosecution recommended a term of life and that the rejected plea bargain agreement did not include any death sentence. However, we note that the prosecution did indicate in the early stages of these proceedings that the death penalty might be appropriate. The State did not

11

argue for the imposition of the death penalty at sentencing, but this does not prohibit the District Court from rendering such a sentence when it finds the necessary elements as set forth in §§ 46-18-301 to -310, MCA. Defendant Keith also states that the parole officer preparing the presentence investigation stated a life sentence would insure public safety. The authoring parole officer, however, specifically noted that the District Court might wish to consider the imposition of the death penalty, and avoided making any specific sentence recommendation. Keith also points out that none of the victims' relatives, nor the victims themselves, indicated that the death penalty would be appropriate. Although there were certain victim statements contained in the presentence investigation report, no other victim statement evidence was introduced at the sentencing hearing and defendant presented no additional evidence of this nature for the District Court's consideration. Even assuming all of the living victims and all of the victims' relatives did not favor the death penalty, this would not necessarily control the sentencing decision. We refuse to reverse the sentence based on these contentions.

Keith contends that his sentence is disproportionate and excessive when compared to other Montana cases which have resulted in a penalty of death. Montana law requires this Court to conduct such a comparison, considering both the crime and the defendant, and to include in this decision a reference to those similar cases considered. Section 46-18-310(3), MCA. In regards to this consideration,

> [W]e need not examine every similar case whether appealed or not, rather we need only examine those cases where after conviction the death penalty could have been or was imposed that has reached our attention through the appellate process.

12

State v. Smith (Mont. 1985), 705 P.2d 1087, 1108, 42 St.Rep. 463, 490. This Court has affirmed the death penalty for a total of four criminal defendants since the landmark case of Gregg v. Georgia (1976), 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859. In Smith, we engaged in an examination and comparison of the following three cases: State v. McKenzie (1976), 171 Mont. 278, 557 P.2d 1023, vac. (1977), 433 U.S. 905, 97 S.Ct. 2968, 53 L.Ed.2d 1089, on remand (1978), 177 Mont. 280, 581 P.2d 1205, vac. (1979), 443 U.S. 903, 99 S.Ct. 3094, 61 L.Ed.2d 871, cert. denied (1979), 443 U.S. 912, 99 S.Ct. 3103, 61 L.Ed.2d 877, on remand (1980), 186 Mont. 481, 608 P.2d 428, cert. denied (1980), 449 U.S. 1050, 101 S.Ct. 626, 66 L.Ed.2d 507; State v. Coleman, (1979), 185 Mont. 299, 605 P.2d 1000, cert denied (1980), 446 U.S. 970, 100 S.Ct. 2952, 64 L.Ed.2d 831; and State v. Fitzpatrick (1980), 186 Mont. 187, 606 P.2d 1343, cert. denied (1980), 449 U.S. 891, 101 S.Ct. 252, 66 L.Ed.2d 118. At the time of the Smith case, these were the only three "cases arising in Montana since 1973, the effective date that the death penalty could be imposed for the crime of aggravated kidnapping in which the victim [was] killed." Smith, 705 P.2d at 1108, 42 St.Rep. at 490. The Smith decision included the following descriptions of the circumstances involved in each of these three cases:

> The defendant in McKenzie, supra, was charged with deliberate homicide and aggravated kidnapping as a result of the bludgeoning death of Lana Harding. The District Court imposed the death penalty for both offenses and this Court affirmed following remand from the United States Supreme Court. McKenzie, supra, 581 P.2d 1205. The victim was found draped over a grain drill; partially nude; with a rope tied around her neck; and severely beaten about the head and body. Death had been

caused by severe blows inflicted by Duncan McKenzie, the defendant.

In Coleman, supra, Dewey Coleman was sentenced to death following the jury's verdict of guilty of the crime of aggravated kidnapping. The defendant raped Peggy Harstad, beat her about the head with a motorcycle helmet, attempted to strangle her with a nylon rope and finally held her in the Yellowstone River until she drowned.

The defendant in Fitzpatrick, supra, was convicted of deliberate homicide, aggravated kidnapping and robbery and was sentenced to death for the homicide and kidnapping of Monte Dyckman. The victim was found dead lying on the passenger seat of his car with his hands tied behind his back. Monte Dyckman had been shot twice with a gun held less than six-inches from his head. The homicide resulted from the perpetration of the robbery.

Smith, 705 P.2d at 1108, 42 St.Rep. at 490.

The defendant in Smith, supra, was convicted, pursuant to guilty pleas, of two counts of aggravated kidnapping and two counts of deliberate homicide. State v. Smith (Mont. 1985), 705 P.2d 1087, 42 St.Rep. 463, cert. denied (1986), 474 U.S. 1073, 106 S.Ct. 837, 88 L.Ed.2d 808. While in the process of stealing a car, defendant Smith abducted and shot two victims in the head at point blank range with a sawed-off, single-shot, bolt action .22 rifle. At his sentencing hearing, Smith indicated he committed the murders because he did not wish to leave any witnesses to his car theft and that he had had a "morbid fascination to find out what it would be like to kill somebody." Smith, 705 P.2d at 1089, 1090, 42 St.Rep. at 465. Smith constitutes the fourth

14

case in which this Court has affirmed the penalty of death since the Gregg case in 1976.

Keith argues his crimes were not nearly as heinous or perverse as those cited above. However, we find it neither convincing nor controlling that some might say Keith's actions were not as heinous or perverse as those other Montana cases which have generated a death penalty. In comparison to these past cases, we find defendant Keith's crimes are of a sufficient magnitude to qualify for capital punishment.

Keith alleges he had "no malicious plan to take a life." He contends his only true original intent was to commit a robbery. Instead, his intentions were escalated out of control due to his desire to escape and that the death of Shryock was the result of an incompetent and negligent response by law enforcement officials. Therefore, he concludes that capital punishment is disproportionate and excessive under these facts.

The record demonstrates that Keith abducted a young boy at gun point and clearly stated he would kill the youth if his demands were not met. Keith buttressed his claim by forcing the barrel of the gun against the youth's head. It is difficult to imagine how one would not classify this scenario as a "malicious plan to take a life." The youth was released only after he was replaced with another hostage, Harry Shyrock, who thereupon became a kidnap victim, held at gunpoint by Keith. Keith classifies Shryock as a "volunteer" hostage. Although Shryock's actions were noble, they were not voluntary. A volunteer offers himself for a service free of compulsion. Shryock offered his presence in exchange for the youth's freedom and his actions were therefore not free from compulsion and cannot be classified as voluntary. As previously mentioned, Keith fired a shot at a clerk in the

store which could have resulted in her death. The District Court concluded that the killing by Keith was in execution style, and that Keith took Shryock's life because he did not want to die alone. After a careful review of the entire record, we conclude that the circumstances of this crime are directly comparable to the four cases previously considered in Montana. While the circumstances of the killing by Keith are not identical to these four cases, clearly his crime is properly classified as both heinous and perverse and of sufficient magnitude to qualify for capital punishment in a comparable manner to the other four cases reviewed in Montana. We hold that capital punishment is not disproportionate or excessive under the facts of the present case.

## II. INTENT OF THE DEFENDANT.

Keith contends the death penalty is excessive or disproportionate for a charge of aggravated kidnapping when that charge fails to allege he intentionally took a life. Count V of the information charged defendant with aggravated kidnapping and stated:

> [D]efendant DAVID CAMERON KEITH, committed the offense of aggravated kidnapping as specified in MCA § 45-5-303, when he purposely or knowingly and without lawful authority restrained HARRY LEE SHRYOCK, JR., by using or threatening to use physical force with the purposes of using HARRY LEE SHRYOCK, JR., as a shield or hostage and/or to facilitate the commission of several felonies or the flight thereafter. The defendant used a handgun in the commission of this offense and his conduct as described in this Count resulted in the death of HARRY LEE SHRYOCK, JR.

16

Following Keith's guilty plea to the above charge, the District Court determined Keith was eligible for the death penalty because the charge was aggravated kidnapping which resulted in the death of the victim and there were no mitigating circumstances sufficiently substantial to call for leniency. See §§ 46-18-303, -304, and -305, MCA.

Keith's argument is that the language in the information fails to charge him with intentionally killing the victim. Keith argues the death penalty is excessive and disproportionate under Count V because he did not specifically plead guilty to any intentional conduct regarding the death of the victim. Defendant concludes that without this element of intent, the death penalty is excessive and disproportionate, resulting in cruel and unusual punishment and a violation of due process. In short, Keith alleges that an intentional killing is a constitutionally essential element if the death penalty is to be imposed.

Defendant notes he did plead guilty to purposely or knowingly causing the death of his victim under Count VI (Deliberate Homicide), but argues that the mental state of Count VI should not be incorporated into Count V. However, Keith's contention merely confuses the issue by playing a "shell game" with the counts contained in the information. Keith entered guilty pleas to five crimes and makes no allegations that the information is incorrectly drafted in regards to those crimes. Subsequent to those guilty pleas and as he enters the sentencing phase of the trial process, the sentencing judge is allowed to consider a wide variety of factors. Section 46-18-302, MCA. It would be an injustice to prohibit the District Court from considering the fact that Keith plead guilty to deliberate homicide, when deciding

17

whether capital punishment was appropriate for the aggravated kidnapping which resulted in the death of the victim.

Even assuming Keith is correct and that the District Court can only look solely to the language contained in the count which charges an aggravated kidnapping of Harry Shryock, there is still no absolute prohibition from implementing the death penalty on that count. Keith is correct in stating that there are certain crimes for which the Constitution will not allow a death penalty. See, Coker v. Georgia (1977), 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (capital punishment is excessive and therefore unconstitutional if imposed for the charge of rape alone). However, we do not believe that capital punishment is constitutionally prohibited in all cases unless the defendant is responsible for an intentional killing. As support for his argument, Keith cites Enmund v. Florida (1982), 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d. 1140. Enmund involved the question of accomplice liability in situations where an accomplice did not directly participate in a murder, but only assisted the murderer in his escape from the scene of the crime. A death sentence for such an accomplice who did not intend to commit a homicide was rejected. The Court noted that capital punishment will probably serve as a deterrent "only when murder is the result of premeditation and deliberation." 458 U.S. at 799. (quoting Fisher v. United States (1946), 328 U.S. 463, 484, (Frankfurter, J., dissenting)). However, the Court indicated a substantial limitation by stating:

> It would be very different if the likelihood of a killing in the course of a robbery were so substantial that one should share the blame for the killing if he somehow participated in the felony.

18

Enmund, 458 U.S. at 799.

The limited nature of Enmund is highlighted by the more recent case of Tison v. Arizona (1987), ____ U.S. ____, 107 S.Ct. 1676, 95 L.Ed.2d 127. Tison involved the imposition of capital punishment against accomplices who were substantially involved in the commission of four homicides, but did not actually commit homicide themselves. The Court held that major participation in a felony murder charge, combined with a reckless indifference to human life, is sufficient to satisfy the Enmund culpability requirement.

Both Enmund and Tison can be distinguished from the present facts, since both address whether the death penalty is appropriate for an accomplice who did not actually take a life but assisted in a crime with that result. In contrast, defendant Keith has obviously taken a life himself. However, the cases are useful in analyzing whether capital punishment is an excessive or disproportionate penalty when the charging document does not specifically allege an intent to kill by the defendant for the particular crime that generated a death sentence. We believe that the cases demonstrate the United States Supreme Court has not absolutely prohibited capital punishment in such situations.

Furthermore, this Court decided this precise issue in McKenzie v. Osborne (1981), 195 Mont. 26, 47, 48, 640 P.2d 368, 381. In that case, defendant challenged his death sentence for his conviction of aggravated kidnapping by stating that there was never any finding by the jury that he deliberately took the life of his victim. Defendant contended that capital punishment was unconstitutionally disproportionate for the crime of aggravated kidnapping because there was no charge or finding that he had an intent

19

to kill. 195 Mont. at 47, 48, 640 P.2d at 381.[1] We rejected that contention in McKenzie v. Osborne, supra, and we reject it once again here. Capital punishment is not invariably disproportionate to the crime when a life has been taken by the offender. 195 Mont. at 48, 640 P.2d at 381. See also, Gregg v. Georgia (1976), 428 U.S. 153, 187, 96 S.Ct. 2909, 2932, 49 L.Ed.2d 859, 882. Defendant Keith entered a plea of guilty to a charge of aggravated kidnapping which resulted in the death of his victim. We conclude that capital punishment is not invariably disproportionate in such a case.

Finally, Keith argues that the statutory aggravating circumstance of § 46-18-303(7), MCA, fails to properly narrow the class of defendants eligible for the death penalty. Keith relies on Zant v. Stephens (1983), 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235, and states that an aggravating circumstance must narrow the class of people eligible for the death penalty and reasonably justify the more severe sentence. 462 U.S. at 877. Keith contends that the aggravating circumstance of § 46-18-303(7), MCA (an aggravated kidnapping resulting in the death of the victim), fails to perform this task. Keith reasons that this aggravating circumstance fails to narrow the class of defendants eligible for capital punishment because every aggravated kidnapping resulting in the death of the victim qualifies for the death penalty regardless of whether or not the defendant desired the resulting death. Keith states this

---

[1] In McKenzie, Defendant-Appellant argued in his brief that his "death sentence was clearly imposed without a constitutionally proper finding that he possessed the intent to kill which the Eighth Amendment makes prerequisite to forfeiture of life." Appellant's Brief at 24.

particular aggravating circumstance "does not reserve the punishment to extreme cases or to those particularly severe crimes for which the death penalty is particularly appropriate." He concludes that this aggravating circumstance fails to narrow the applicability of capital punishment to those few defendants truly deserving such punishment.

Keith's argument is misplaced and is logically incorrect. He ignores the wording of the statutes. Section 45-5-303, MCA, defines the offense of kidnapping for the purposes of the present case as follows:

> A person commits the offense of aggravated kidnapping if he knowingly or purposely and without lawful authority restrains another person . . . by using . . . physical force, with any of the following purposes:
>
> (a) to hold for ransom or reward or as a shield or hostage; . . .

In itself the statute points out that aggravated kidnapping was the result when Keith restrained Shryock by the use of physical force in order to hold him as a shield and hostage. The facts clearly demonstrate aggravated kidnapping as defined in this section. At this point, the sentence of death <u>may</u> be imposed pursuant to § 45-5-303(2), MCA. The court is required by § 46-18-301, MCA, to hold a separate sentencing hearing to determine whether further aggravating circumstances exist. Section 46-18-303, MCA, defines aggravating circumstances for this purpose as:

> Aggravating circumstances are any of the following:
>
> . . .

21

(7) the offense was aggravated kidnaping which resulted in the death of the victim . . .

. . .

Clearly the aggravating circumstance is the death of the victim which of course goes substantially beyond the aggravated kidnapping itself. Certainly the death of the victim is a statutory factor which narrows the cases in which capital punishment might be applicable. We conclude this meets the test set forth in Zant. The United States Supreme Court recently explained this test as follows:

> [T]he use of "aggravating circumstances," is not an end in itself, but a means of genuinely narrowing the class of death-eligible persons and thereby channeling the [sentencer's] discretion.

Lowenfield v. Phelps (1988), ____ U.S. ____, 108 S.Ct. 546, 554, ____ L.Ed.2d ____ (affirming the proposition that a sentence of death may validly rest upon a single aggravating circumstance even though that aggravating circumstance is a necessary element of the underlying offense of first degree murder). We specifically hold that § 46-18-303(7), MCA, genuinely narrows the class of death-eligible persons and is an appropriate aggravating circumstance for the death penalty. In addition, we point out that the District Court was required to consider whether any of the mitigating circumstances of § 46-18-304, MCA, would apply. These circumstances of course may have a narrowing effect if any of them are present.

III. MITIGATING CIRCUMSTANCES.

Capital punishment is inappropriate under Montana law if the District Court finds mitigating circumstances

22

sufficiently substantial to call for leniency. Section 46-18-305, MCA, states in part:

> In determining whether to impose a sentence of death or imprisonment, the court shall take into account the aggravating and mitigating circumstances enumerated in 46-18-303 and 46-18-304 and shall impose a sentence of death if it finds one or more of the aggravating circumstances and finds that there are no mitigating circumstances sufficiently substantial to call for leniency.

Section 46-18-304, MCA, address mitigating circumstances and states:

> Mitigating circumstances are any of the following:
>
> (1) The defendant has no significant history of prior criminal activity.
>
> (2) The offense was committed while the defendant was under the influence of extreme mental or emotional disturbance.
>
> (3) The defendant acted under extreme duress or under the substantial domination of another person.
>
> (4) The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired.
>
> (5) The victim was a participant in the defendant's conduct or consented to the act.
>
> (6) The defendant was an accomplice in an offense committed by another person, and his participation was relatively minor.
>
> (7) The defendant, at the time of the commission of the crime, was less than 18 years of age.

23

(8) Any other fact that exists in mitigation of the penalty.

The District Court addressed each of the above mitigating circumstances in its written findings of fact and found no mitigating circumstances sufficiently substantial to call for leniency.

Keith alleges the District Court failed to properly consider the mitigating factors existing under these facts and that such a failure constitutes a violation of the Eighth and Fourteenth Amendments to the United States Constitution. Keith is correct in asserting that the United States Supreme Court has concluded:

> [T]hat the Eighth and Fourteenth Amendments require that the sentencer in all but the rarest kind of capital case, not be precluded from considering, _as a mitigating factor_, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death. (Emphasis in original.)

Lockett v. Ohio (1978), 438 U.S. 586, 604, 98 S.Ct. 2954, 2964-65, 57 L.Ed.2d. 973, 990. See also, Eddings v. Oklahoma (1981), 455 U.S. 104, 114, 102 S.Ct. 869, 876, 71 L.Ed.2d 1, 10. Accordingly, Montana law mandates that the District Court consider mitigating circumstances. Section 46-18-305, MCA. The District Court in this case properly followed the applicable law and considered the mitigating circumstances presented by defendant Keith.

At the sentencing hearing, Keith was given the opportunity to present any evidence of mitigating circumstances. Such evidence was heard and received by the District Court. Subsequently, the District Court issued findings of fact addressing each mitigating circumstance

24

listed in § 46-18-304, MCA, including the residual category of subsection (8) providing for the consideration of any "fact that exists in mitigation of the penalty." The District Court concluded that there were no mitigating circumstances sufficiently substantial to call for leniency and we agree with that conclusion.

Section 46-18-310, MCA, directs us to consider whether the evidence within the record supports the District Court's findings regarding aggravating and mitigating circumstances. In regards to making such a consideration, we have stated:

> [W]e make such an assessment based upon our independent review of the trial court record. In so doing, we are not usurping the position of the District Court as the primary entity in Montana's system of criminal jurisprudence, rather we mean to insure that the death penalty, unique in its severity . . . is not wantonly or arbitrarily and capriciously imposed. State v. Coleman (1979), 185 Mont. 299, 605 P.2d 1000, cert. denied, 446 U.S. 970, 100 S.Ct. 2952, 64 L.Ed.2d 831, reh'g denied, 448 U.S. 914, 101 S.Ct. 34, 65 L.Ed.2d 1177 (1980); Gregg v. Georgia, supra, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859; Furman v. Georgia, supra, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346.

Smith, 705 P.2d at 1096-97, 42 St.Rep. at 474.

Keith lists twenty-one items which allegedly constitute mitigating circumstances sufficiently substantial to call for leniency. The items tend to overlap and some are repetitive. The list can be summarized into five categories and addressed as follows:

1. Physical and mental disabilities.

Keith alleges he has suffered significant physical disabilities from having been shot by law enforcement officials during the commission of his crimes. He states

25

that he now suffers from seizures, his vision is impaired, he must take daily medication, he has difficulty with his movement, and that his right hand and arm are disabled. Additionally, Keith contends he was suffering from significant mental impairments before and during the commission of his offenses. He alleges he suffers from an organic personality syndrome, an antisocial personality disorder, and has a long-standing history of drug abuse.

We conclude that the District Court properly discounted these mitigating circumstances when it found that the circumstances were not sufficiently substantial to call for leniency. We further conclude that the District Court considered all evidence relating to the physical and mental disabilities of Keith which were presented at the hearing. After a careful review of the record, we hold that the District Court properly concluded that no substantially mitigating circumstances existed in this case.

2. Remorse and reform.

Keith states he has experienced remorse for his crimes and a desire to reform by helping others. Keith alleges he exhibited a concern for others by advising William Crose, Jr., to avoid drugs. Apparently, Keith offered this advice to his young victim sometime during the kidnapping. Keith additionally states he has been categorized as a good worker and no officer of the court, nor any victim or relative of a victim, requested the death penalty. Defendant's contentions that he is remorseful and genuinely wishes to reform are regarded as self-serving and we refuse to find they constitute mitigating circumstances sufficiently substantial to call for leniency. See, Smith, 705 P.2d at 1098, 42 St.Rep. at 477.

3. Prior Criminal record.

26

Keith contends his prior criminal record includes a number of property crimes, but no crimes of violence. We have rejected the contention that a lack of prior criminal activity necessarily requires leniency in the sentencing. Coleman, 185 Mont. at 331-32, 605 P.2d at 1019-20. Similarly, we have rejected the argument that past criminal history without any violent crimes necessarily requires leniency in the sentence. Smith, 705 P.2d at 1098, 42 St.Rep. at 476. Keith has clearly demonstrated his capacity for violence by threatening the life of William Crose, Jr., firing a shot at Delores Coffman, and in the murder of Harry Shryock. We agree with the District Court and hold that the absence of violent crimes from Keith's criminal history is not a sufficiently substantial mitigating circumstance.

4. Effect of injury sustained during the commission of the crimes.

Keith states that the gunshot wound he sustained before he shot Shryock represents a sufficient mitigating circumstance. Keith contends that because of the wound, he was under the influence of extreme mental or emotional disturbance, and that the wound substantially impaired his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law. See, § 46-18-303(2) and (4), MCA.

To hold that the wound sustained by Keith is a sufficient mitigating circumstance would be to ignore the vast majority of his criminal activity. At the time Keith was shot, he had completed every crime for which he plead guilty except deliberate homicide. More importantly, Keith had already set the stage for the deliberate homicide by holding Shryock hostage at gunpoint. Keith cannot now receive leniency in his sentence because he subsequently alleges the homicide would not have occurred if he had not

27

been shot. Keith was responsible for creating the circumstances generating his injury and we will not find that the bullet wound is a mitigating circumstance sufficiently substantial to call for leniency.

Additionally, there is reason to seriously doubt Keith's contention altogether. In the updated presentence investigation report filed April 4, 1985, Keith is reported to have made a statement which stated, in part, "immediately after [being shot] I came to the conclusion that I was going to die, I didn't want to go alone so I fired by pistol into the back of the head of Mr. Harry Shryock ." Despite a liberal opportunity to do so, Keith did not object to this portion of the report, and the District Court made the report part of the record at the sentencing hearing on April 10, 1985. At the sentencing hearing, the District Court is allowed to hear any evidence that it considers to have probative force. Section 46-18-302, MCA. Keith's statement appears to demonstrate that he consciously contemplated his actions. Since Keith had the opportunity to rationalize and contemplate his actions, we hold that the bullet wound does not constitute a mitigating circumstance sufficiently substantial to call for leniency.

5. Miscellaneous personal problems.

Finally, Keith cites a variety of miscellaneous personal problems which he contends are sufficient mitigating circumstances. Keith states he was young when his father died, that his mother-in-law died within the month prior to his crime spree, that his wife had miscarried shortly prior to the crimes, that he was only 27 years old, and that he was out of work. Even if we assume all of the above personal difficulties are true, we find no mitigating circumstance sufficiently substantial to call for leniency.

28

## IV. PASSION, PREJUDICE, OR OTHER ARBITRARY FACTORS.

Section 46-18-310(1), MCA, provides that this Court shall determine "whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor; . . . " Keith contends his sentence was imposed under the influence of passion, prejudice, adverse publicity, and fear of community objection. Keith bases his argument on three grounds.

First, Keith contends the proposed plea bargain set a strong tone of adverse public opinion and gave rise to a tremendous media outcry for a strong sentence. Keith alleges the sentencing process was ultimately affected. However, these contentions are speculative. Keith fails to produce any evidence supporting the allegation that the sentence was influenced by public opinion or the media, and we will not alter or reverse his sentence based on these unsupported allegations.

Second, Keith asserts the District Court Judge's record and reputation demonstrate his criminal sentencing is overly harsh, especially when a crime is drug related (Keith has a significant history of drug abuse, but has testified he was not under the influence of drugs at the time of the crime). These contentions are also speculative and without any credible supporting evidence. On December 4, 1985 the defense filed a motion to disqualify District Judge Holter and this Court ordered District Judge Loble to hear and determine the disqualification argument. The transcript indicates that during a telephone conference on January 13, 1986 with Judge Loble, counsel for defendant Keith stated there was "no obvious prejudice or bias on the part of Judge Holter." A hearing was held on the disqualification issue February 4, 1986, and the motion was denied April 3, 1986,

because the defense failed to show prejudice and because the motion was not timely. Keith was unable to provide any facts or reasons to support his contention of bias or prejudice and his motion for disqualification was properly denied. The contention that there was prejudice or bias on the part of the sentencing judge has no merit.

Finally, Keith relies on the recent case of Booth v. Maryland (1987), ____, U.S. ____, 107 S.Ct. 2529, 96 L.Ed.2d 440. In Booth, the Court determined that it was a violation of the Eighth Amendment for a sentencing jury to refer to information contained in a "victim impact statement" during the sentencing phase of a capital murder trial. The victim impact statement included information regarding the personal characteristics of the victims, the emotional impact of the crimes on the family, and opinions from the family members regarding the crimes and the defendant. The U.S. Supreme Court found that this type of "information is irrelevant to a capital sentencing decision, and that its admission creates a constitutionally unacceptable risk that the jury may impose the death penalty in an arbitrary and capricious manner." 96 L.Ed.2d at 448. Defendant contends the presentence investigation for this case contains precisely this sort of information and it was improperly considered by the District Court for sentencing purposes.

The presentence investigation report contained a section entitled "victim's impact and concerns." The section includes summaries of interviews with four individuals: Willaim Crose, Jr., William's father, and Harry Shryock's son and widow. The report gives a summary of each of their concerns regarding the crime and the impact of the crime on their lives. The information is similar to that addressed in the Booth case, although it does not appear to be as inflammatory or prejudicial in nature.

Additionally, we note that none of the individuals interviewed in the presentence investigation express a desire to extract a pound of flesh in the form of capital punishment. Of those individuals interviewed, none of them suggest that the death penalty is an appropriate recourse. Instead, the opinions and suggestions either state or imply that Keith should not be afforded an early opportunity for parole and that he should probably be imprisoned for life.

In any event, Booth is factually distinguishable from Montana sentencing procedures and does not affect the sentence rendered by the District Court. "Section 46-18-302, MCA, authorizes the sentencing judge to consider the widest possible scope of inquiry when determining the sentence to be imposed." Smith, 705 P.2d at 1095, 42 St.Rep. at 472. Section 46-18-302, MCA, states:

> In the sentencing hearing, evidence may be presented as to any matter the court considers relevant to the sentence, including but not limited to the nature and circumstances of the crime, the defendant's character, background, history, and mental and physical condition, and any other facts in aggravation or mitigation of the penalty. Any evidence the court considers to have probative force may be received regardless of its admissibility under the rules governing admission of evidence at criminal trials. Evidence admitted at trial relating to such aggravating or mitigating circumstances shall be considered without reintroducing it at the sentencing proceeding. The state and the defendant or his counsel shall be permitted to present argument for or against sentence of death.

Additionally, Montana law requires that the probation officer preparing a presentence investigation must inquire into

31

information regarding "the harm to the victim, his immediate family, and the community." Section 46-18-112, MCA.

We see no conflict between these statutes and Booth v. Maryland, supra, because Booth is factually distinguishable from Montana sentencing procedures and is therefore not controlling. Booth speaks specifically to the situation where a jury is responsible for sentencing. In contrast, the district court judge performed the sentencing in this case as required by Montana law. We believe there is a great amount of difference between what information a district court judge may hear throughout the course of a criminal trial and subsequent sentencing, and the information which a jury may be allowed to hear. For example, it is commonly recognized that the trial judge presiding in a criminal trial is allowed to hear and rule on the admissibility of evidence which the jury is not allowed to consider, and yet the trial judge is still responsible for sentencing. See, Coleman v. Risley (1983), 203 Mont. 237, 248, 663 P.2d 1154, 1160. We emphasize that the trial judge who presided in this matter is an experienced judge who has tried many criminal cases including homicide cases. We have carefully reviewed the record and find nothing to suggest that this judge was adversely affected by anything which we might call inflammatory as described by the defendant. We distinguish the Booth case from the present case because there a jury was involved and here an experienced trial judge was involved. We hold there was no Eighth Amendment violation when the sentencing judge referred to the victim impact information as contained in the presentence investigation report.

Lastly, we believe defendant Keith raises this objection too late. Keith alleges the information was "replete with evidence which [could] only inflame and impassion the sentencer." Despite the inclusion of this

32

allegedly inflammatory material, Keith failed to make any objection until he was well into the appeal process. We recognize that the <u>Booth</u> case was not decided until June 15, 1987. However, Keith and his counsel were fully aware of the contents of the presentence investigation at sentencing and had the burden of objecting at that time to any prejudicial material contained in the report. If Keith's counsel truly believed the information would "inflame and impassion" the sentencing judge, an objection surely would have been made at that time. The District Court offered Keith an ample opportunity to rebut any disagreeable information in the report at the sentencing hearing. Defense counsel was afforded the opportunity to examine the official that prepared the report, Keith personally testified regarding what he believed to be inaccuracies in the report, and defense counsel was given a liberal opportunity to enter any objections believed necessary. In State v. Smith, supra, we addressed a highly similar issue. In <u>Smith</u>, the defendant alleged certain inaccuracies in the presentence investigation and did so for the first time on appeal. In response, we stated:

> For the first time the defendant suggests error in the sentence because the presentence report included four offenses committed prior to the defendant attaining the age of majority. This contention loses much of its credibility because the defendant waited until this appeal to raise it. This Court will not review a matter raised for the first time on appeal. <u>Peters v. Newkirk</u> (Mont. 1981), 633 P.2d 1210, 38 St.Rep. 1526; <u>Northern Plains v. Board of Natural Resources</u> (1979), 181 Mont. 500, 594 P.2d 297. This Court has long held that the defendant has an affirmative duty to present evidence showing the inaccuracies contained in the report. <u>State v.</u>

33

> Transgrud (Mont. 1982), 651 P.2d 37, 39
> St.Rep. 1764; State v. Radi (1979), 185
> Mont. 38, 604 P.2d 318.

Smith, 705 P.2d at 1093, 42 St.Rep. at 470. We believe the same authorities and reasoning apply here; and hold that Keith has raised his objections too late.

### V. AGGRAVATING CIRCUMSTANCES REGARDING THE AGGRAVATED KIDNAPPING CHARGE.

Keith contends the evidence does not support the District Court's findings of an aggravating circumstance regarding the aggravated kidnapping charge. Montana law requires the existence of a statutory aggravating circumstance before capital punishment is appropriate. Section 46-18-305, MCA. Aggravating circumstances are addressed in § 46-18-303, MCA, which states that an aggravating circumstance exists when:

> (7) The offense was aggravated kidnapping which resulted in the death of the victim . . .

This subsection was amended in 1987, but the above quoted portion remains unchanged. The District Court specifically found that the aggravating circumstance of subsection (7) applied.

Defendant Keith argues he should be exempted from this aggravating circumstance because he did release William Crose, Jr., unharmed, and fully intended to release Harry Shryock until the time at which he was shot by a law enforcement officer. Keith asserts the death of Shryock would never have occurred if the situation had been properly handled by law enforcement authorities.

It is ironic that Keith blames the law enforcement authorities for an incident that he in fact created. Keith

can not now be exempted from this aggravating circumstance simply because he subsequently alleges his intent was to safely release Shryock. Section 46-18-303(7) simply states an aggravating circumstance exists when an aggravated kidnapping results in the death of the victim. Aggravated kidnapping is controlled by § 45-5-303, MCA, which states in part:

> (1) A person commits the offense of aggravated kidnapping if he knowingly or purposely and without lawful authority restrains another person by either secreting or holding him in a place of isolation or by using or threatening to use physical force, with any of the following purposes:
>
> (a) to hold for ransom or reward or as a shield or hostage;
>
> (b) to facilitate commission of any felony or flight thereafter;
>
> . . .

Keith's abduction of Shryock fits the requirements of this statute. At a hearing in District Court on March 28, 1985, Keith testified as follows:

> Q. Now, when you were at the airfield, and Mr. Shryock was in the airplane, was it your intention to have the airplane take off and take you some place?
>
> A. Yes, it was.
>
> Q. And you were, Mr. Shryock was going to, I say that, I think that it is Shryock, was going to fly you there?
>
> A. Yes, he was.
>
> Q. And was that done at gun point, too?
>
> A. Yes.

Q. In other words, was your gun trained on Mr. Shryock?

A. Yes, it was at the back of his head at all times.

Q. And, did--when you exchanged the boy for the pilot, would you tell me how that was accomplished? I wasn't clear on that?

A. The boy was let go. He was probably ten yards from the airplane. Mr. Shryock was already in the airplane and I got in the airplane.

Defendant Keith committed an aggravated kidnapping of Shryock and that aggravated kidnapping resulted in Shryock's death. The District Court has properly found the existence of this aggravating circumstance.

### VI. AGGRAVATING CIRCUMSTANCES REGARDING THE DELIBERATE HOMICIDE CHARGE.

Keith alleges the District Court improperly found the existence of an aggravating circumstance in regard to the deliberate homicide charge. As noted in the preceding issue, without the finding of a statutory aggravating circumstance, the death penalty is inappropriate. Section 46-18-303, MCA, provides that an aggravating circumstance exists if:

> (1) The offense was deliberate homicide and was committed by a person serving a sentence of imprisonment in the state prison.
>
> . . .

At the sentencing hearing on April 10, 1985, the District Court Judge stated the following to Keith in explaining the death penalty for deliberate homicide:

> [T]he Court has considered Section 46-18-303 of the Revised Codes of Montana

36

                    and I specifically find that involved was
                    the offense of deliberate homicide which
                    was committed while you were on parole
                    and serving on parole from a sentence out
                    of the State of Washington.

The statute expressly applies to "a person serving a sentence of imprisonment in the state prison." (Emphasis added.) The plain wording of the statute does not allow an interpretation which would include an individual on parole. The general rule of statutory construction is set out in § 1-2-101, MCA, which provides in pertinent part as follows:

                    In the construction of a statute, the
                    office of the judge is simply to
                    ascertain and declare what is in terms or
                    in substance contained therein, not to
                    insert what has been omitted or to omit
                    what has been inserted.

The District Court found that Keith was on parole from the state of Washington at the time of the offense. He committed the offense while in Flathead County. Our statute fails to address the issue whether deliberate homicide committed by a parolee from this or any other state constitutes an aggravating circumstance for purposes of the death penalty. Section 46-18-303(1), MCA, allows the death penalty only where the offense is committed by a person serving a sentence of imprisonment in the state prison. Keith does not meet this statutory requirement. We conclude that the statutory aggravating circumstance of § 46-18-303(1), MCA, did not exist. We therefore reverse the judgment of the District Court which imposed the death penalty for the offense of deliberate homicide.

We must note that the result on this particular issue is troubling. We have researched the capital punishment statutes of every jurisdiction in the United States retaining capital punishment as a sentence and failed to locate any

37

aggravating circumstances drafted as narrowly as § 46-18-303(1), MCA. Statutes providing for aggravating circumstances in certain other states tend to address all situations where an assailant was in custody, incarcerated, or under sentence of imprisonment. See e.g., Ariz. Rev. Stat. Ann. § 13-703(f)(7)(1987); Fla. Stat. Ann. § 921.141(5)(a)(1987); and Tenn. Code Ann. § 39-2-203(i)(8)(1987). We invite the legislature to consider amending § 46-18-303(1) so that it addresses all incarceration situations, as well as parole. However, until such a change is made, this aggravating circumstance does not apply unless the assailant is serving a sentence of imprisonment in the state prison.

## VII. CONCLUSION

In summary, we affirm the District Court in all respects, except for the death sentence rendered for the charge of deliberate homicide. After examining all errors alleged by the defendant, we find no other reversible error. The remaining sentences are affirmed. We remand to the District Court to resentence defendant on the deliberate homicide charge and to set a new date for the execution.

_____
Justice

We concur:

_____

_____

38

_R. C. Gulbrandson_

_R. C. McDonough_

_William E. Hunt Sr._

Justices

_Arthur B. Martin_

The Honorable Arthur B. Martin,
Judge of the District Court,
sitting in place of Mr. Chief
Justice J. A. Turnage