JUSTICE GRAY
dissenting.
I concur in the Court’s opinion on issues 1 through 4 and 6.1 dissent from the opinion on issues 5 and 7.
*33 With regard to issue 5, it is my view that the statutory aggravating circumstances which the District Court found to exist do not exist in this case as a matter of law. This Court’s conclusion to the contrary rests primarily on its statement that the jury did not find Gollehon not guilty of deliberate homicide, but only found that he did not act alone during the crime. The Court then quotes the legally correct instruction on accountability in seeming support of the application of the two aggravating circumstances at issue here. The Court is in error.
The Court’s statement is incorrect and insupportable on the record before us. The record is clear that Gollehon was charged with, and acquitted of, deliberate homicide; he was charged in the alternative with accountability for deliberate homicide and convicted of that charge.
Nor does the quoted instruction support the Court’s conclusion. The instruction properly directed the jury that, to convict Gollehon of accountability for deliberate homicide, it need only find that a deliberate homicide was committed and that either or both defendants “either before or during” the commission of the offense solicited, aided or abetted the other in the “planning or commission of the offense.” Nothing in the instruction required the jury to find that Gollehon committed the offense of deliberate homicide.
To apply the aggravating circumstances at issue here required the District Court to make two determinations. First, the court had to find that the offense involved was deliberate homicide. There is no dispute about that fact. Second, however, the court had to find that the offense was committed by Gollehon. See § 46-18-303(1) and (2), MCA. Given Gollehon’s acquittal on the deliberate homicide charge and the instruction requiring only that the defendant solicit, aid or abet before or during the commission of the offense regarding the planning or commission of the offense, it is my view that the District Court could not make the second determination required for application of the aggravating circumstances at issue. This Court has stated that “without the finding of a statutory aggravating circumstance, the death penalty is inappropriate.” State v. Keith (1988), 231 Mont. 214, 240, 754 P.2d 474, 489. I conclude that the death penalty cannot be imposed here because no statutory aggravating circumstance exists.
In addressing issue 7, the Court concludes that the District Court did not err as a matter of law in imposing the death penalty on Gollehon. It reaches this conclusion by focusing primarily on the *34 nature of “accountability,” rather than on Montana’s sentencing statutes. The Court relies on Illinois cases interpreting the “parent” of our accountability statute; the Court does not, however, examine whether Montana’s sentencing statutes are adopted from Illinois or even whether they are similar to those in effect in Illinois so as to legitimize the use of the Stanciel and Ruiz cases in resolving this important issue which is truly a matter of life and death. For those reasons, and because it is my view that an appropriate analysis of Montana’s sentencing statutes precludes application of the death penalty to Gollehon’s conviction for accountability for deliberate homicide, I dissent.
The death penalty may be imposed in Montana only under the limited circumstances provided by statute. Specifically, that sentence is available for the offenses defined in §§ 45-5-102(a) and (b), 45-5-303, and 46-18-220, MCA. Only § 45-5-102, MCA, is relevant here.
Section 45-5-102, MCA, describes when a person has committed deliberate homicide. Such an offense is committed when a person “purposely or knowingly causes the death of another human being.” Section 45-5-102(l)(a), MCA. Gollehon was charged with, and specifically found not guilty of, this offense. Pursuant to § 45-5-102(l)(b), MCA, the offense of deliberate homicide for which the death penalty is available also includes the crime commonly referred to as “felony murder.” This offense is not at issue here. Thus, the death penalty available for these offenses pursuant to § 45-5-102(2), MCA, is not available here.
Moreover, with regard to § 45-5-102, MCA, the statute makes it clear that the legislature is aware of how to include what we might call “offshoot” homicides — such as felony murder — in the definition of the offense of deliberate homicide for which the death penalty is available. The legislature specifically included felony murder; it did not include accountability for deliberate homicide.
Other statutes also must be scrutinized to determine the applicability of the death penalty in this case. Section 45-2-302, MCA, describes when a person is legally accountable for the conduct of another. It is this accountability for deliberate homicide of which Gollehon was convicted. That statute does not include any sentencing provision. Other statutes addressing indirect offenses, such as “conspiracy” and “attempt,” do contain sentencing provisions. Those statutes, §§ 45-4-102(3) and 45-4-103(3), MCA, essentially provide for the same sentence as the underlying offense. Again, it is clear that the legislature knows how to include sentencing cross-references when it *35 desires and intends to do so. It did not do so with regard to accountability.
The Montana legislature has provided a “fall back” sentence to cover convictions for which it does not specify a penalty. Section 46-18-213, MCA, mandates that when no penalty is otherwise provided for a felony, the sentencing court may sentence for any term not to exceed 10 years in the state prison, a fine not to exceed $50,000, or both. I conclude that this statutory penalty applies to Gollehon’s conviction.
The Court suggests that it is I, through my reasoning, who would allow the perpetrator of a heinous crime to be sentenced to a maximum of ten years’ imprisonment. This is not so. The fact is that it is the legislature’s job — not mine or this Court’s — to determine appropriate sentences for criminal offenders. The legislature has not clearly provided for the imposition of the death penalty under these circumstances. If its failure to do so is an unintended result of legislative oversight, the legislature can, and should, correct it. Absent such an action, a proper interpretation of the legislature’s intent as reflected in present sentencing statutes is that the death penalty is not available here.
It is my view that the Court’s conclusion on this issue violates the most fundamental canons of both judicial function and statutory interpretation. It has not interpreted the statutes at issue here in accordance with their plain meaning. Rather, it has inserted into the statutes a criminal sentence — the most severe and final sentence of all — not provided for by the Montana legislature, in direction contravention of § 1-2-101, MCA. I cannot agree.
The Court’s approach also represents a radical departure from the rule of lenity which has been embraced by this Court in interpreting penal statutes and from its own controlling, and recent, precedent. In State v. Goodwin (1991), 249 Mont. 1, 813 P.2d 953, and State v. Van Robinson (1991), 248 Mont. 528, 813 P.2d 967, we affirmed our commitment to the following “classic rule of construction of criminal statutes” in construing sentencing statutes:
Penal statutes are construed with such strictness as to safeguard the rights of the defendant. ... [Pjenal statutes are not to be extended in their operation to persons, things, or acts not within their descriptive terms, or the fair and clear import of the language used. Nothing can be read into penal statutes by implication.
Goodwin, 813 P.2d at 966 (citation omitted). See also Van Robinson, 813 P.2d at 971, quoting Goodwin. I submit that the Court’s analysis on this issue violates this classic rule by extending the death penalty *36 to a person and acts not within either the terms or the fair and clear import of the language used by the Montana legislature. The death penalty will be imposed on Gollehon by implication.
This Court also has agreed — until now — with the following United States Supreme Court articulation of the rule of lenity:
First, as we have recently reaffirmed, “ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity.” In various ways over the years, we have stated that “when choice has to be made between two readings of what conduct Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite.” This principle is founded on two policies that have long been part of our tradition. First, “a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed. ...” Second, because of the seriousness of criminal penalties, and because criminal punishment usually represents the moral condemnation of the community, legislatures and not courts should defined criminal activity. This policy embodies “the instinctive distaste against men languishing in prison unless the law-maker has clearly said they should.” Thus, where there is ambiguity in a criminal statute, doubts are resolved in favor of the defendant.
Goodwin, 813 P.2d at 967 (citations omitted). This classic and governing rule is applicable here and mandates a conclusion that the death penalty cannot be imposed on Gollehon. Yet, the Court totally ignores even the existence of the rule of lenity in analyzing the availability of the death penalty in this case. The Court’s confusing references to Goodwin in the companion case of State v. Turner certainly provide no help in fostering clarity in this regard. We are left to wonder whether this case signals the death knell of the rule of lenity in Montana or, alternatively, whether the Court intends to continue to embrace that rule only where the underlying facts are less brutal and horrifying than those encompassing the death of inmate Pileggi.
I feel no sympathy for Gollehon. Indeed, the brutality of the acts upon which his conviction is based is surely beyond the understanding and even the imagination of eveiy decent and rational human being. The fact remains, however, that the Montana legislature has not provided for application of the death penalty here. I cannot allow my horror over the circumstances of this crime to *37 override my view of the result necessary here as a matter of law. I would remand this case to the District Court for resentencing.
JUSTICE TRIEWEILER and JUSTICE HUNT join in the foregoing dissent of JUSTICE GRAY.
ORDER
Appellant, William Gollehon has filed a petition for rehearing from this Court’s opinion published on October 20, 1993. The State has filed a response. Gollehon merely reargues his case and his petition is, therefore, denied. However, we issue the following statement for clarification as to Gollehon’s allegation of discovery abuse.
The State actually sent Gollehon two letters concerning lists of evidence. The first letter was sent on April 12,1991, and contained a list of 211 pieces of evidence. The July 1,1991, Disclosure Statement adds two more pieces of evidence not in the first list, making the July fist total 213 pieces of evidence.
In the April letter, the State declares: “Please let me know which of these documents you have not received and I will supply copies to you.” The record in this case is devoid of any subsequent request from Gollehon for any of the 211 pieces of evidence.
Based upon Gollehon’s lack of response to the State’s April 12 request, the State had the right to “assume” that Gollehon had in his possession all of the 211 pieces of evidence. We must also assume that Gollehon had copies of items 212 and 213 (videos of inmate interviews and another interview with an inmate witness) because he did not object to any discovery violation until during trial.
This Court was presented on appeal with an allegation that Gollehon did not have certain exculpatory evidence which the State was under a duty to present. Further, this Court was presented a record that did not contain many of the 213 items of evidence on the July list.
The State had the right to assume that Gollehon had the 213 pieces of evidence. The statute concerning disclosure by the State specifically declares that the defendant must “request” certain material held by the State which “tends to mitigate or negate the defendant’s guilt as to the offense charged or that would tend to reduce the defendant’s potential sentence.” Section 46-15-322(l)(e), MCA. We must assume that Gollehon did not make any specific request because there is no evidence of such request in the record. What is in the record is the State’s attempt to comply with that production of *38 evidence by requesting that Gollehon check his files and determine what he did not have.
Whether Gollehon actually had these items is not the legal question presented to the Court. The facts present us with a situation which requires only that we determine whether the State met its statutory responsibility. The opinion concluded that the State had satisfied its responsibility.
The facts show that Gollehon was given the opportunity to request anything from the first 211 items of evidence. The law clearly states that the responsibility was on Gollehon to make the request. (The second part of § 46-15-322, MCA, lists the information that the State “shall” provide to defendant.)
The opinion is written correctly according to the evidence and the record presented to this Court.
IT IS ORDERED that Gollehon’s petition for rehearing is denied. A true copy of this Order shall be sent to all attorneys of record.
Dated this 14th day of December, 1993.
CHIEF JUSTICE TURNAGE, JUSTICES HARRISON, GRAY, JUDGE LYMPUS, sitting for JUSTICE McDONOUGH, concur.
JUSTICES TRIEWEILER and HUNT would grant the petition for rehearing.